## Richmond.

## KATHERINE ELKINS HITT v. GEORGE T. SMALLWOOD.

### May 27, 1926.

1. WORKING CONTRACTS—*Books and Accounts of Contractor—Statements Furnished by Contractor to Owner—Burden of Proof in Suit to Surcharge and Falsify.*—Books kept and statements furnished by a contractor to the owner are presumed to be correct, especially those furnished to an agent of the owner and paid by him, and also a condensed statement made by an accountant and admitted by the owner's agent to show the correct balance between the parties. Therefore, in a suit by the owner to surcharge and falsify the contractor's accounts, the burden is upon the owner to show that such accounts were incorrect or fraudulent.

2. WORKING CONTRACTS—*Books and Accounts of Contractor—Suit by Owner to Surcharge and Falsify Accounts of Contractor—Acceptance of Work by Owner.*—The acceptance of work upon a building contract, after the discharge of the contractor and the appointment of another to complete the work, does not deprive the owner of the legal right to impeach the charges made by the contractor in his accounts.

3. MASTER IN CHANCERY—*Report of Commissioner—Power of Chancellor.*— The report of the commissioner in chancery does not bind the court like the verdict of the jury. While the court possesses the absolute power of review, it is the practice to accept the report as *prima facie* correct and to adopt it, unless there is dissatisfaction with the report expressed in the form of exceptions. When this is done, it is both the province and duty of the court to examine the evidence and review the conclusions of its commissioner, provided the evidence on which his conclusions are based is returned with his report, or the proper steps are taken to put it before the court.

4. EQUITY—*Chancellor Judge of Both the Law and the Facts.*—In suits in equity the chancellor is judge of both the law and facts, and is presumed to be more competent to pass upon the evidence and draw correct conclusions from it than the commissioner.

5. MASTER IN CHANCERY—*Report of Commissioner—Commissioner Who has Seen and Examined the Witnesses.*—Where the testimony is conflicting the report of a commissioner in chancery who has seen or examined the witnesses will not be disturbed, where the commissioner's conclusions are supported by unimpeached witnesses, unles

. the. weight of the testimony contrary to the commissioner's conclusions makes it. clear that the commissioner has erred.

6. BUILDING CONTRACTS—*Cost-Plus Plan—Duty of Contractor to Keep Accounts—Skill and Ability of Contractor.*—Upon reason and authority where· a person agrees to do work for another upon a cost-plus basis, it is his duty to keep accurate and correct accounts of all material used and labor performed, with the names of the material men and laborers, so that the owner may check up the same. He must use the same skill and ability as he uses in contract work for a gross sum.

7. WORKING CONTRACTS—*Cost-Plus Plan—Accounts—Cost Suggesting Gross Negligence or Fraud.*—Where work is done by a contractor under the cost-plus plan, if the aggregate cost upon the face of the account is so excessive and unreasonable as to suggest gross negligence or fraud, the law would impose upon the contractor the duty of establishing the *bona fides* of his performance of the work.

8. BUILDING CONTRACTS—*Cost-Plus Plan—Inspection by Owner—Assumption of Risk by Owner from Incompetency of Contractor—Case at Bar.*—In the instant case, which arose out of a building contract on the cost-plus plan, there was no concealment by the contractor and supervision was invited. Statements were furnished semi-monthly of materials and labor. The contractor exercised the same skill and ability upon the cost-plus work as he did with the contract work which he was doing for the owner for a gross sum. It was certain from the evidence that the contractor had no fraudulent purpose to increase cost so as to enlarge his commission.

    *Held:* That the owner assumed the risk of increased cost arising from the incompetency and inexperience of the contractor.

9. WORKING CONTRACTS—*Expert and Opinion Evidence—Opinion that a Foundation Contained no Cement.*—In a suit arising out of a building contract, two witnesses expressed the opinion from their observation of the outside of the wall that the foundation of the building had no cement in it.

    *Held:* That this testimony could not override the positive testimony' of the mason who built the wall that he put sufficient cement in it. :

10. WORKING CONTRACTS—*Account of Contractor—Attacking Item After it. was Presented and Paid.*—In a suit arising out of a building contract the refusal of the court to disallow an item of the contractors' account; for time made by laborers as excessive, and because the kind of work done was not specified, was not error where the item was furnished to the agent of the owner. If there was any doubt about its accuracy the agent should have demanded an explanation of the same before he paid it.

11. INTEREST—*Ordinary Cases Between Debtor and Creditor—Exceptions—Case at Bar.*—While in ordinary cases between debtor and creditor the practice is to allow interest from the due date· of the debt, this'

is not an inflexible rule of law. In the instant case the appellee, a building contractor, had caused delay in payment by the owner by numerous errors and overcharges in his books and statements, which required legal investigation to ascertain the balance due, and it would not have been just and equitable to allow interest until the balance was fixed.

12. Master in Chancery—*Appeal—Weight of Report of Commissioner.*—The report of a commissioner sustained by the trial court, when the evidence was taken in his presence, is entitled to great weight and should not be disturbed upon appeal unless its conclusions are clearly unsupported by the evidence.

Appeal from a decree of the Circuit Court of Loudoun county. Decree for defendant. Complainant appeals.

*Decree affirmed.*

The opinion states the case.

*Carlin, Carlin & Hall*, for the appellant.

*Edwin E. Garrett*, for the appellee.

Christian, J., delivered the opinion of the court.

This suit grew out of a contract between Katherine Elkins Hitt, plaintiff in the trial court, and George T. Smallwood, defendant, entered into in June, 1920, to build a garage of stone upon the plaintiff's farm in Loudoun county, Virginia, known as the "Millsville farm," by the defendant for the sum of $14,291.80, plus the cost of hauling and delivery of materials to the site of the building, with an additional ten per cent of such hauling cost to the defendant for his services.

Shortly after the execution of the above contract the plaintiff entered into a second contract, providing for certain extra work in connection with this garage to be performed on a cost-plus basis, said contract

providing that the appellant should pay for this extra work "the cost of materials, labor and hauling and ten per cent thereof." Payments were to be made on the 1st and 15th of each month for material bills then on hand and payable, and the labor bills then due and accrued, including an allowance of $30.00 per week to the defendant for his personal use and expense. George R. Gaither was appointed to act as agent and representative of Mrs. Hitt, with authority to make payments and generally supervise the work to be done.

As the work progressed the defendant furnished statements to Gaither for the labor and materials furnished for the building, properly allocated, every two weeks, which were paid, including the statement of November 30, 1920. After that some payments were made but not regularly, and in April, 1921, Mrs. Hitt dismissed Smallwood from the job, whereupon he presented to Gaither his account for $26,607.94, the total amount due for the building and extra work, divided as follows: Contract work, $14,291.80; extra work, labor hauling, etc., $12,315.14. This statement was considered incorrect and Gaither and Smallwood got Lawson, a teacher in the high school, to go over same and make corrections in additions and otherwise. Some errors in charges and additions were discovered by Lawson and the balance due to Smallwood, according to this account, was $11,954.66, but Gaither declined to pay it.

Thereupon Gaither and Smallwood, upon advice of Ed. E. Garrett, Esquire, employed E. L. McFarland, assistant cashier of the National Bank of Leesburg, Virginia, to go over the books and papers and make a correct statement of the account. Gaither did not keep any books, but had the statements furnished by Smallwood, certain bills rendered, and the checks and

drafts for payments. Smallwood kept an account in a book of the material and labor, which went into building and extra work, but this account was not kept by an experienced bookkeeper, and it was difficult to ascertain what was properly chargeable to contract work and extra work. The extra work comprised a cellar for furnace room, a pump room, water works, and concrete work connected therewith.

These statements, bills for materials, checks, drafts and account book were delivered to McFarland with instructions to make up a correct account between the parties, showing amounts properly chargeable to the contract work, and extra work, the amounts paid thereon, and the balance due. After conference with the parties, McFarland, with considerable labor, stated the account as follows:

Total amount claimed by Smallwood, $26,607.94, composed of contract work, $14,291.80; extra work, labor, hauling, etc., $12.315.41. This statement showed that appellant had paid Smallwood on the original contract $13,633.38, and on the extra work, $4,112.87, or a total payment of $17,746.25, leaving a balance due from the appellant of $8,861.69. The evidence tends to prove that Gaither admitted that the account was correct, and promised that same would be paid.

After some delay the appellant refused to pay this balance, or any part thereof. Thereupon, about November 18, 1921, Smallwood brought an action against Mrs. Hitt in the Circuit Court for Loudoun county, Virginia, and filed his declaration in *assumpsit* claiming damages in the sum of $9,000.00.

On June 5, 1922, appellant filed her bill in this case, charging that the appellee's account was erroneous, grossly excessive or fraudulent, and asking for the production of the books, papers and records of the appellee,

and for an injunction against the further prosecution of the action at law. This bill required the appellee to answer the same upon oath. A preliminary injunction was granted.

In due course an answer was filed, which was sworn to by the appellee, and after hearing a motion to dissove the injunction and upon the answer, a decree was entered February 23, 1923, overruling the appellee's demurrer, denying the motion to dissolve, referring the cause to a master commissioner for an account, and requiring the production of all papers, books and records before the commissioner, and continuing the injunction in effect until the further order of the court.

The taking of depositions was begun on September 19, 1923, and were concluded on May 21, 1924. After several months of consideration Commissioner Franklin made his report, which was filed on September 3, 1924, and therein found a balance due from the appellant to Smallwood of $6,115.63. The appellant filed a written motion to recommit the report, with instructions to the commissioner to correct the same in the particulars stated. Both parties filed exceptions to the report.

On February 10, 1925, the case came on to be heard on the report of the commissioner, the motion to recommit and the exceptions to the report, and upon consideration thereof the court overruled the motion to recommit, and the exceptions of appellant and appellee, entered the decree approving and confirming the commissioner's report and gave judgment against the appellant for $6,115.63 with interest thereon from the 10th day of February, 1925, and costs. From this decree the appellant appealed and the appellee has assigned cross error.

It is necessary, in order to properly consider this appeal, that the contractual relations of the parties be

borne in mind. By virtue of the contract for the garage, Smallwood was to furnish all material, except slate and plumbing fixtures, as provided in the plans and specification, and to build said garage in a skillful, competent and workmanlike manner, for the sum of $14,291.80, plus the cost of hauling, with ten per cent commission for his service in having the hauling done. For the extra construction there were no plans and specifications, and Smallwood was to exercise his judgment in the purchase of material and employment of mechanics and laborers, and build the same in such manner and by such methods as to him seemed reasonable and proper. In other words, as to this extra work, he was practically agent for Mrs. Hitt and for his services was to receive ten per cent commission upon the gross cost of this work.

The duty of keeping the accounts for material, labor and other costs was imposed upon him, and semi-monthly payments were to be made upon his statements. However, George T. Gaither had general supervision over him and the work as representative of Mrs. Hitt.

[1, 2] The books kept and statements furnished by Smallwood are presumed to be correct, especially those furnished Gaither and paid by him, and the condensed statement made by Mr. McFarland and admitted by Gaither to show the correct balance. Therefore, the burden of proof was upon appellant in this proceeding to show that the accounts were incorrect or fraudulent. She assumed the burden of surcharging and falsifying these accounts, and recognized that obligation under the familiar rules of chancery practice, when by her bill she required Smallwood to answer under oath and that all his books and papers be produced before the court for inspection and examination. Nor does

the acceptance of the work by Mrs. Hitt, under the circumstances as detailed in the evidence, deprive her of her legal right to impeach the charges made by Smallwood in his accounts. The statement of this rule of evidence becomes important in this case, as counsel for both parties have assumed it as the hypothesis favorable to their clients in their respective arguments, upon the weight of the testimony and the inferences to be drawn therefrom.

[3, 4] The report of the commissioner in chancery does not bind the court like the verdict of the jury. While the court possesses the absolute power of review, it is the practice to accept the report as *prima facie* correct and to adopt it, unless there is dissatisfaction with the report expressed in the form of exceptions. When this is done, it is both the province and duty of the court to examine the evidence and review the conclusions of its commissioner, provided the evidence on which his conclusions are based is returned with his report, or the proper steps are taken to put it before the court. In suits in equity the chancellor is judge of both the law and facts, and is presumed to be more competent to pass upon the evidence and draw correct conclusions from it than the commissioner.

[5] "When, however, the evidence consists of the depositions of witnesses and they are taken by the commissioner or in his presence (as was done in the instant case), he would have the advantage of noting the demeanor of the witnesses and their manner of testifying, which is important in judging of their credibility and the weight to be attached to their evidence when they contradict each other.

"When, therefore, the commissioner has seen and examined the witnesses and the testimony is conflicting, and his conclusions are clearly supported by competent and unimpeached witnesses, the court will not set

aside or disturb his report, unless the weight of the testimony which is contrary to his conclusions is such, on account of the number of the witnesses and the nature of their evidence, as to make it clear that the commissioner has erred. *Haulenbeck* v. *Cronkright*, 23 N. J. Eq. 409 and *Clark* v. *Condit*, 211 N. J. Eq. 322. But even in such case, the court will review and weigh the evidence, and if not satisfied that the commissioner has reached a right conclusion, will overrule his finding. *Holmes* v. *Holmes*, 18 N. J. Eq. 141; *Boyd & Co.* v. *Gunnison & Co.*, 14 W. Va. 1." *Shipman* v. *Fletcher*, 91 Va. 473-479, 22 S. E. 458, 460.

The testimony in this case went into the character of construction in considerable detail, the quantities of material and labor necessary to produce the results to be accomplished. The theory of the appellant's testimony being that the claim for labor and materials for the so-called extra work was excessive and unreasonable, and he could only recover what was the reasonable cost thereof, while the appellee undertook to prove that all the labor and material charged in his account to extra work went into the same, thus was presented a sharp conflict in the evidence. Upon this record the learned chancellor reviewed the evidence, weighed the expert testimony against the direct testimony and overruled all exceptions to the commissioner's report and confirmed the same. We are asked to review and annul this decision.

It is essential that the third and fourth assignments of error, to-wit, that the charges for labor and materials for the so-called extra work were excessive and unreasonable, and that the commissioner should have found what was the reasonable cost, be considered first, because they are practically the basis of the appellant's case. This controversy arose from the belief of Mrs.

Hitt that cost of the extra work was so excessive and unreasonable as to amount to fraud and deliberate overcharging or padding of the accounts. She employed A. J. Porter, a contractor of many years experience, as an expert to go to the building, make up the quantities of material necessary for the building, the earth to be removed, the labor to do the work, and the reasonable cost of each item and the aggregate sum which the work should have cost. Porter performed this service; made up a detailed and itemized statement of the quantity of lumber, stone, cement, and labor necessary in his opinion to do the extra work and the cost of same. The aggregate cost according to him of the extra work amounted to $4,355.99. Porter was examined before the commissioner, and explained in detail how the statement was prepared, and his estimates of cost from his experience, filing his statement as an exhibit. Another contractor and a building superintendent were examined in corroboration of his testimony in some particulars, and their opinions placed the cost at less than Porter's. The appellee met this testimony with statements that gave the names of the persons from whom he purchased the material, and the name and time of each person who worked upon the job.

[6, 7] Upon reason and authority, where a person agrees to do work for another upon a cost-plus basis, it is his duty to keep accurate and correct accounts of all material used and labor performed, with the names of the materialmen and laborers, so that the owner may check up the same. He must use the same skill and ability in the extra work as he uses in contract work for a gross sum. If the aggregate cost upon the face of the account is so excessive and unreasonable as to suggest gross negligence or fraud, the law would

impose upon the contractor the duty of establishing the *bona fides* of his performance of the work.  Contractors and laborers differ so, in experience, judgment, energy and capacity, methods of doing the work are different; the local conditions surrounding the place of the work, and the scarcity or plentifulness and character of labor varies to such extent, that the law does not and cannot standardize the cost of work.

The case of *Title Guaranty & Trust Company* v. *Pam,* 155 N. Y. Supp. 333, sustains the principle of law above set forth.  In that case, the construction company contracted to do the work according to plans and specifications at cost and a percentage.  The court held that it owed to the owner the same skill and ability on the work as would be given where the contractor must do the work at less than contract price to secure its profit.  The contractor refused to allow the owner's inspection of the work, and it was found that the work was done in reckless disregard of its obligations.  In short, the contractor refused to allow any supervision of the work and required the owner to implicitly trust him, and when it had been shown that the work had been done in ruthless disregard of its obligation, the burden rests upon the contractor to prove that the moneys which he claims to have expended were necessarily paid for materials and work upon the job.

[8] In the *Pam Case,* the conclusion is inescapable that the contractor purposely undertook to defraud the owner by the reckless manner in which work was done.  In the instant case there was no concealment, and in fact supervision was invited.  During the progress of the work statements were furnished semi-monthly of materials and labor.  The incompetency and inefficiency of the employees, if any, was revealed in the

time employed to complete the work and the appellant could have checked this up, if she desired. It is certain from the record that Smallwood had no fraudulent purpose to increase the cost so as to enlarge his commission. He seems to have exercised the same skill and ability about the extra work as he did with the contract work, and the most that can be said of his manner of doing the work was that he lacked experience and efficiency. This was a risk the appellant assumed in his employment, and the court was right in overruling these exceptions.

[9] As to the exceptions for failure to put cement in the foundation, the only evidence to sustain this was the fact that no cement was found next to the earth. The man who laid the wall says he put sufficient cement in it, and it is hardly probable that any workman would lay a dry wall for a foundation. Opinion evidence based upon the observation of the outside of the wall by McKinsey and the negro laborer should not override the positive testimony of the mason who built the wall, especially as there were no defects shown by settlement in the super-incumbent walls.

[10] The next assignment of error is the refusal of the court to disallow the statement for time made by laborers in the extra work from August 1st to September 30, 1920, as excessive and because the kind of work done is not specified. This statement was furnished to Gaither, and if there was any doubt about its accuracy, he should have demanded an explanation of same before he paid it. The commissioner who saw the demeanor of the witness, and carefully weighed the evidence, allowed the amount, and the trial court confirmed his findings, and we see no error therein.

No good purpose can be served by the discussion of the appellee's assignments of cross error, in the allow-

ance by the commissioner of four hundred and seventy dollars for inferior workmanship upon the garage, and sixty-eight dollars and twenty cents overcharge upon the pump house, as credits to Mrs. Hitt. The evidence clearly sustains the justice of these credits, and the court was right in allowing them.

[11] The final cross error of the appellee is the refusal of the court to allow interest upon the balance except from the date of judgment. While in ordinary cases between debtor and creditor the practice is to allow interest from the due date of the debt, this is not an inflexible rule of law. The appellee had caused the delay in payment by the numerous errors and overcharges in his books and statements, which required legal investigation to ascertain the balance due, and it does not appear just and equitable that interest should be allowed until the balance had been fixed. The court evidently considered the equities of the case in awarding interest, and we think it was right.

[12] Upon careful consideration of the record, if we had any fair doubt as to conclusions of the commissioner, we would affirm the decree, and follow the familiar rule, so often emphasized, that the report of a commissioner, when the evidence has been taken in his presence, is entitled to great weight, and should not be disturbed unless its conclusions are clearly unsupported by the evidence, and such a report on the balance due the appellee based upon conflicting testimony, and sustained by the trial court, will not be overruled on appeal. *American Surety Co.* v. *Hannah,* 143 Va. 291, 130 S. E. 411-413.

Taking a comprehensive view of the facts in this case, the site of the buildings, the means by which the materials were to be obtained, and labor conditions, it appears that Smallwood was not equal to the accom-

plishment of the result economically, and that Mrs. Hitt was disappointed in the cost, and that the commissioner, after careful investigation of each and every detail of the transaction, has arrived at as near complete justice between the parties as is practical under all the circumstances of the case, and the learned chancellor, after mature consideration, has confirmed his findings, therefore, as we find no error in the report or decree, the decree will be affirmed.

*Decree affirmed.*

HOLT, J., dissenting.