# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WALTER BECKETT v. C. W. KORNEGAY.

### May 24, 1928.

1. VENDOR AND PURCHASER—*Time as Essence of the Contract—Equity—Specific Performance.*—The established doctrine is, that in equity time is not usually regarded as of the essence in contracts for the sale of real estate, unless it has been expressly so provided in the contract, or it necessarily follows from the conduct of the parties or the nature and circumstances of the agreement that time should be considered as of the essence.

2. CONTRACTS—*Time as Essence of the Contract—Equity and Law.*—At law, in every case of dependent covenants, time is of the essence of the contract, since the plaintiff cannot recover without showing performance on his part, or readiness and ability to perform. But, in equity, it is upon general principles otherwise.

3. VENDOR AND PURCHASER—*Specific Performance—Time as Essence of the Contract.*—Although a vendor may not have complied in strictness with his contract to convey—or the vendee may not have paid his money precisely at the stipulated time, equity will, nevertheless, upon a proper case made, enforce the contract, instead of permitting either party to insist on an arbitrary forfeiture of its benefits.

4. CONTRACTS—*Time as Essence of the Contract—Payment of Money—Contracts in Respect to Real Estate—Equity.*—Mere default in the payment of money at a stipulated time admits generally of compensation, and hence time of payment is seldom treated as essential in contracts in respect to real estate.

5. CONTRACTS—*Equity—Relief Against Forfeiture.*—There is no lack of power in a court of equity to grant relief against the failure to perform punctually conditions precedent when time is not of the essence of the contract and compensation can be had.

6. VENDOR AND PURCHASER—*Time as Essence of the Contract—Specific Performance—Delay by Purchaser Speculating for a Rise.*—When a vendee delays in completing the contract, in order that he may speculate upon the chances of its proving to be an advantageous bargain, or that, through a rise in value, or other change or circumstances, his gain may be assured, and then, when he is thus certain that it will be a fortunate speculation, offers to perform, and sues to compel a

conveyance by the vendor, a court of equity will refuse to grant him the remedy.

7. VENDOR AND PURCHASER—*Time as Essence of the Contract—Specific Performance—Existence of a "Boom"—Case at Bar.*—The instant case was a suit by the vendee for specific performance of a contract for the sale of real property. It was contended in behalf of the vendor that time was of the essence of the contract for the reason that the contract constituted, in effect, only an option, and that a "boom," which started several weeks after the contract was executed greatly enhanced the market value of the property, and that the purchaser having failed to make the cash payment and tender of a trust deed for the balance of the purchase price on or before the date stipulated, he forfeited his rights under the contract. But the contract was not an option but constituted a complete executory contract for the sale of land, and there was nothing in the evidence to indicate that the purchaser was speculating for a rise in value, or delayed performance on his part for that purpose. Therefore the rule that in equity time is not of the essence of the contract prevailed.

8. VENDOR AND PURCHASER—*Time as Essence of the Contract—Specific Performance—Delay by Purchaser Speculating for a Rise—Case at Bar.*—The instant case was a suit for specific performance of a contract for the sale of real property by the vendee against the vendor. The vendor's defense was that the vendee had not made the first payment nor executed the deed of trust at the date fixed by the contract. It appeared from the evidence that the vendee was ready and willing to make the first payment and execute the deed of trust at the time set, and was merely awaiting the clearing up of certain tax liens upon the property to do so. The vendee told the agent of the vendor that he was ready to make settlement as soon as the title was clear and the deed delivered. It clearly appeared that the vendee did not desire or attempt to delay settlement but entered into the contract in good faith and was at all times ready to perform his part of the agreement. According to his own admission, vendor was dissatisfied with the price at which he had sold the property and regretted having made the contract.

  *Held:* That a decree for specific performance would not be disturbed on appeal.

9. SPECIFIC PERFORMANCE—*Time as Essence of the Contract—Delay by Purchaser—Acquiescence of Vendor—Case at Bar.*—The instant case was a suit for specific performance. Defendant asserted that owing to delay in the first payment and execution of a trust deed for the balance of the purchase money, the vendee had forfeited his rights under the contract of sale. The property was assessed for certain delinquent taxes jointly with certain other adjacent sites, and

counsel for the buyer volunteered to counsel for the seller to have a segregation order entered.

*Held:* That in undertaking to have the segregation order entered, counsel for the purchaser was acting for the vendor and not for the purchaser, and if there was any undue delay the responsibility rested upon the vendor and not upon the purchaser.

10. VENDOR AND PURCHASER—*Specific Performance—Time as Essence of the Contract—Delay of Purchaser in Making First Payment Acquiesced in by Vendor—Case at Bar.*—In an action for specific performance by the vendee in a contract of sale of real property against the vendor, defendant asserted that the vendee had breached the contract by failing to make first payment and execute a deed of trust for the balance at the time set by the contract. It appeared from the evidence that both the vendor and his counsel purposely refrained from intimating to the vendee or his counsel, at any time prior to the date set for performance of the contract, that they considered time of any importance, or that they would make any question in regard to it. The evidence showed that the vendor acquiesced in the delay that occured before he undertook to terminate the contract.

*Held:* That the vendor was, therefore, estopped from refusing on that ground to complete the agreement, even though the vendee had been responsible for such delay.

11. SPECIFIC PERFORMANCE—*Discretion of Court.*—Every application for the specific performance of a contract is, in the final analysis, addressed to the sound discretion of the court, regulated by established principles.

Appeal from a decree of the Circuit Court of Princess Anne county. Decree for complainant. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Chas. S. Grant* and *Henry Bowden*, for the appellant.

*M. Earl Woodhouse* and *Edwin J. Smith*, for the appellee.

CHINN, J., delivered the opinion of the court.

By a contract in writing dated May 25, 1925, Walter

Beckett agreed to sell, and C. W. Kornegay agreed to buy, a certain parcel of land belonging to said Beckett, situated at Virginia Beach, at the price of $2,000.00. According to the terms of the agreement, $50.00 was paid on the purchase price at the time of the execution thereof; $450.00 was to be paid when the deed was "delivered" and "full settlement" made; and the balance of $1,500.00 was to be secured by a deed of trust, and paid in installments of $500.00 each on December 10, 1925, June 10, 1926, and December 10, 1926, respectively. The vendor agreed to convey the property "with general warranty deed and the usual covenants of title," and the deed of trust was to be prepared and all deeds recorded at the expense of the vendee. The contract further provides that all taxes should be prorated as of the date of settlement; that the title should be free of all liens and indebtedness of every kind; and that "settlement is to be made on or before June 5, 1925."

Settlement not having been made as stipulted, on July 6, 1925, Mr. Charles S. Grant, acting as attorney for Beckett, mailed to Kornegay's attorney, Mr. M. Earl Woodhouse, the following letter:

"Mr. M. Earl Woodhouse,

"Attorney at Law,

"No. 148 Granby Street,

"Norfolk, Va.

"Dear Sir:

"By reason of the delay of your client, Mr. C. W. Kornegay, to make settlement with my client, Mr. Walter Beckett, pursuant to their contract dated May 25, 1925, please be advised that Mr. Beckett treats the contract as having been breached by Mr. Kornegay, will therefore decline to deliver the property mentioned in the contract, and accordingly hereby tenders a

check for fifty dollars payable to you as attorney for
Mr. Kornegay in return of the money paid under the
contract.

"Yours very truly,
"CHARLES S. GRANT."

Promptly upon receipt of this letter Woodhouse
returned the check, and notified Mr. Grant that
Kornegay stood ready to perform his part of the agree-
ment, and demanded a deed. Beckett adhered to his
refusal to consummate the sale, and thereupon Korne-
gay instituted this suit in equity to enforce the specific
performance of said contract.

Beckett duly answered, and depositions were taken,
and upon the hearing of the cause the court below
decreed performance in accordance with the prayer of
the bill. From that decree Beckett appeals.

[1] It is contended in behalf of the appellant that
time was the essence of the contract in question, and,
appellee having failed to make the cash payment and
tender the deed of trust specified on or before the date
stipulated for the settlement, he forfeited his rights
under the contract and appellant has the right to
refuse performance on his part. The established doc-
trine is, that in equity time is not usually regarded as
of the essence in contracts for the sale of real estate,
unless it has been expressly so provided in the contract,
or it necessarily follows from the conduct of the parties,
or the nature and circumstances of the agreement that
time should be considered as of the essence.

In *Jackson* v. *Ligon*, 3 Leigh (30 Va.) 161, Judge
Tucker said:

[2, 3] "At law, in *every* case of dependent covenants,
time is of the essence of the contract, since the plaintiff
cannot recover without showing performance on his
part, or readiness and ability to perform. But, in

equity, it is upon general principles otherwise.   *   * * *   Although a vendor may not have complied in strictness with his contract to convey—or the vendee may not have paid his money precisely at the stipulated time, equity will, nevertheless, upon a proper case made, enforce the contract, instead of permitting either party to insist on an arbitrary forfeiture of its benefits." See also *Smith* v. *Profitt*, 82 Va. 832, 1 S. E. 67; *Henry* v. *Dudley*, 91 W. Va. 969, 114 S. E. 286; 25 R. C. L. page 255-6.

[4] "Mere default in the payment of money at a stipulated time admits generally of compensation, and hence time of payment is seldom treated as essential in contracts in respect to real estate. It is not usually so considered in equity, and there is nothing in the leases to show that the parties so regarded it.

[5] "There is no lack of power in a court of equity to grant relief against the failure to perform punctually conditions precedent when time is not of the essence of the contract and compensation can be had. Story's Eq. Jurisp. section 1315; 1 Lomax Dig., page 357." *Selden* v. *Camp*, 95 Va. 527, 28 S. E. 877.

[6, 7] It is argued, however, that time should be considered as of the essence in this case for the reason that the contract constituted, in effect, only an option, and that a "boom," which started in Virginia Beach real estate several weeks after the contract was executed, greatly enhanced the market value of the property involved, and rendered the delay in fulfilling the contract speculative on the part of Kornegay.

It is true, as said in *Darling* v. *Cumming's Executor*, 92 Va. 526, 23 S. E. 882: "When a vendee delays in completing the contract in order that he may speculate upon the chances of its proving to be an advantageous bargain, or that, through a rise in value, or other

change of circumstances, his gain may be assured, and then, when he is thus certain that it will be a fortunate speculation, offers to perform, and sues to compel a conveyance by the vendor, a court of equity will refuse to grant him the remedy."

We do not think, however, the facts and circumstances of this case warrant the application of the above doctrine, in any sense. In the first place, the contract in question is not an option, depending for its completion upon the acceptance of its terms by the vendee, but constitutes, of itself, a complete executory contract for the sale of land, binding on both parties from the time it was executed. In the second place, we find nothing in the evidence to indicate that Kornegay was speculating upon a rise in value, or delayed performance on his part for that purpose.

[8, 9] It appears from the evidence that the parties were unknown to each other and the contract under consideration was negotiated by F. A. Van Patten, a real estate agent with an office at Virginia Beach, who, under its provisions, was to receive from the vendor a commission of 5% for making the sale, and who was himself a party to the agreement, and the vendor's agent in the transaction. Directly after the contract was signed Kornegay employed Mr. Woodhouse to examine the title and informed Mr. Van Patten that he was ready to settle any time that week if he could get a deed for the property and the title was clear; and Van Patten told Beckett if he would give him a copy of his old deed he would have one drawn by it, and, when executed by Beckett and his wife, would present it to Kornegay. The evidence further shows that prior to June 5th—the date fixed for settlement—Kornegay went with his wife to Van Patten's office to make the cash payment and execute the deed of trust as stipu-

lated in the contract, when Van Patten informed him that he was not ready to settle the matter because he had not received the deed from Beckett, and instructed him to come back on the Thursday of the following week. Kornegay followed these instructions and went to Van Patten's office on the day appointed, again prepared to make settlement. In the meantime Mr. Woodhouse had discovered and reported to Van Patten that certain delinquent tax liens existed against the property involved, which had been assessed in conjunction with several other lots; Beckett had informed Mr. Van Patten that he had employed Mr. Grant to look after his interests in the transaction; and Mr. Grant and Mr. Woodhouse had agreed that the latter should undertake to procure an order of court for the segregation of the tax liens. When this situation was explained to Kornegay on the occasion of his second visit to Van Patten's office, he again told Van Patten that he was ready to make settlement as soon as the title was cleared up and the deed was delivered. No further steps in regard to the matter seem to have been taken by either party until June 25, 1925, when, in accordance with a prior arrangement initiated by Mr. Van Patten or Mr. Woodhouse, the parties, their attorneys, and Mr. Van Patten met in Mr. Grant's office in the city of Norfolk. On this occasion Kornegay tendered three several notes covering the deferred payments, together with a duly executed deed of trust on the property securing the same, and otherwise showed his readiness and desire to complete the contract. As to exactly what occurred on that occasion, the evidence is in conflict. It was testified by Mr. Beckett and Mr. Grant that the deal was not consummated at that time because the notes were drawn in a form which required Mrs. Kornegay's endorsement, and the appel-

lee left with the understanding that he would return on
the 29th of the month to complete the transaction;
while it is testified by Mr. Woodhouse and Mr. Korne-
gay that Kornegay offered to procure his wife's endorse-
ment that day, and the difficulty standing in the way
of a settlement was the fact that the tax liens had not
been adjusted, and they parted with the understanding
that the settlement should stand in abeyance until
Woodhouse had an opportunity to go to Princess Anne
Court House and procure the entry of an order from
the circuit court of that county for the segregation of
the tax liens. However that may be, it is undisputed
that Woodhouse shortly afterwards went out to Princess
Anne and saw the judge in reference to the matter but,
owing to the absence of the commissioner of the revenue
and Commonwealth's attorney, could not obtain the
necessary order, and had not obtained it when he
received from Mr. Grant the above letter of July 6th.

We think it clearly appears from all the facts and
circumstances that Kornegay not only did not desire or
attempt to delay settlement but entered into the con-
tract in good faith and was at all times ready, desirous,
and eager to perform his part of the agreement when-
ever a deed conveying a good title free of all liens was
presented to him. Under the terms of the contract he
had the right to require that the tax liens be discharged,
or at least segregated, in order that the amount against
the property involved might be ascertained, before
taking a deed and closing the transaction. Notwith-
standing this, appellant made no effort to clear up the
liens, as it was his duty to do, but left that task entirely
to Mr. Woodhouse.

In his position for appeal appellant makes the follow-
ing statement on the subject which is borne out by the
evidence:

"It happened that this site was assessed for certain delinquent taxes jointly with certain other adjacent sites, and there had to be entered an order of court segregating this site from the others for the purpose of determining and paying the correct tax. Normally this duty would have fallen upon Beckett, the seller, and his counsel, but counsel for Kornegay, the buyer, volunteered to counsel for Beckett to have the segregation order entered, and counsel for Beckett gladly consented to be relieved of this duty."

In undertaking to have the segregation order entered by the circuit court, Woodhouse was acting for Beckett and not for Kornegay. If, therefore, there was any undue delay in the performance of this duty the responsibility rests upon Beckett and his counsel, and not upon the appellee.

[10] It furthermore appears that prior to July 6th, Beckett had never tendered Kornegay a deed, or offered to perform the contract, or made any demand upon Kornegay for performance on his part. On the other hand, according to Beckett's own admissions, he was dissatisfied with the price at which he had sold the property and regretted having made the contract from the beginning; and the testimony shows that both he and his counsel purposely refrained from intimating to Kornegay or his counsel, at any time prior to the above date, that they considered time of any importance, or that they would make any question in regard to it. Without discussing the evidence relating to this particular question, it shows, to say the least, that Beckett acquiesced in the delay that occurred before he undertook to terminate the contract. He is, therefore, estopped from refusing on that ground to complete the agreement, even though Kornegay had been responsible for such delay. *Booten* v. *Scheffer*, 21 Gratt.

(62 Va.) 474; *Keffer* v. *Grayson,* 76 Va. 517, 44 Am. Rep. 171; *Miller* v. *Lyons,* 113 Va. 275, 74 S. E. 194; *Richmond Leather Manufacturing Co.* v. *Fawcett,* 130 Va. 484, 107 S. E. 800.

[11] Every application for the specific performance of a contract is, in the final analysis, addressed to the sound discretion of the court, regulated by established principles.   Upon careful consideration of all the circumstances we are of the opinion that in the instant case the discretion of the court below was rightly and properly exercised.   The decree will, therefore, be affirmed.

*Decree affirmed.*