# Wytheville.

GRANITE HALL FARMS CORPORATION, ET ALS. V. VIRGINIA TRUST COMPANY, TRUSTEE, RECORD NO. 665.

June 12, 1930.

Absent, Prentis, C. J., and Campbell, J.

The opinion states the case.

*J. H. Bridgers* and *Buford & Raney*, for the appellants.

*Christian & Barton*, for the appellees.

GREGORY, J., delivered the opinion of the court.

This case presents a large record, but there are few questions of law involved. A correct decision of the case rests largely on the facts. Much confusion has arisen because of the many immaterial details and collateral matters which have been pursued.

The material facts are as follows: On May 1, 1920, the Granite Hall Farms Corporation and J. P. Paschall were indebted to the Virginia Trust Company in large sums of money evidenced by bonds. These parties agreed on a new plan whereby the Virginia Trust Company undertook to refinance the Granite Hall Farms Corporation and J. P. Paschall. Paschall was the president and treasurer of this corporation and actively in charge of its affairs. The plan was finally consummated and all of the old obligations of the Granite Hall Farms Corporation and J. P. Paschall were surrendered by the Virginia Trust Company and merged into new obligations which were secured by liens on both real and personal property. The Granite Hall Farms Corporation executed a new deed of trust on its land in Mecklenburg county, comprising some 1,600 acres, securing as a first lien, sixty serial bonds of $1,000.00 each and securing as a second lien a negotiable note of $40,000.00 payable five years after date. All of the bonds and the $40,000.00 note were delivered to the Virginia Trust Company under the new arrangement. The $40,000.00 note, $35,000.00 of bonds of Sunbury Lumber Company and a $10,000.00 note made by I. E. Bugg were held by the Virginia Trust Company as collateral to secure the payment of four negotiable notes of $15,000.00 each made by Paschall and payable one, two, three and four years and held by the Virginia Trust Company. The old obligations which the Virginia Trust Company surrendered were $93,000.00 in bonds of the Granite Hall Farms Corporation, $75,000.00 in bonds of the corporation and joint negotiable notes of the corporation and Paschall.

Five of the serial bonds of $1,000.00 each were paid, leaving a balance of principal of $55,000.00. At this time these remaining bonds, together with thea ccu-

mulated interest were sold to the Securities Holding Corporation and it paid the Virginia Trust Company in full and the bonds were transferred to it by the Virginia Trust Company.

The first two of the $15,000.00 notes were paid by Paschall. The last two of these notes, together with interest, remained due the Virginia Trust Company and unpaid. The Virginia Trust Company being unable to collect these two notes, sold the collateral, after duly advertising it. Paschall consented to the sale and all of the collateral which had been placed with the Virginia Trust Company was bought at the sale by Swink and Gresham, who were at that time large creditors of Paschall. The price paid for the collateral was $37,200.00. Among the items of collateral so purchased by Swink and Gresham was the $40,000.00 note. This note in the meantime having matured and remaining unpaid, the holders, Swink and Gresham, directed the trustee to foreclose the deed of trust which secured the payment of this note on the 1,600 acres in Mecklenburg county. It having been discovered by Swink and Gresham that large quantities of timber were being cut from the 1,600 acres, and the trustee not being advised as to the lien holders under the trust deed nor their priorities, brought a suit in the Law and Equity court to foreclose the trust deed instead of proceeding in the usual manner. It was also sought to restrain the further cutting of timber, and to sell the 1,600 acres in this suit to satisfy the liens. A receiver was asked for and directions as to how to enforce the trust sought. The court granted an injunction, appointed a receiver and directed the land to be sold. Later, the land was sold and Swink and Gresham purchased it at the sale for $84,500.00 cash. The defendant parties to this suit were W. H. Dameron, Thomas

Gresham, A. O. Swink, Florence Paschall, J. P. Paschall, Granite Hall Farms Corporation and Securities Holding Corporation. It will be borne in mind that only three of the defendants, J. P. Paschall, Florence Paschall, and Granite Hall Farms Corporation are appellants in this court. Answers were filed by all of the defendants in the court below and certain parts of the answers of Swink and Gresham were there treated as cross bills. The commissioner, Mr. John B. Minor, to whom the cause had been referred, made and returned his report to which was attached the evidence taken before him. His findings of fact and conclusions of law are clearly set forth in his extensive and illuminating report. The Law and Equity Court of Richmond, after considering the exceptions filed to the report, overruled them and confirmed the report and entered the decree which is here asked to be reversed.

Three exceptions were filed to the commissioner's report and briefly they were as follows:

First: That the commissioner reported the $40,000.00 note and interest thereon, a second lien on the farm; that Swink and Gresham were not the holders in due course of the said note but held the same subject to a collateral agreement between them and Paschall.

Second: That the commissioner reported 900,000 feet of lumber cut from the land by Paschall, but the evidence does not support this finding.

Third: That the commissioner reported $1,750.00 consequential damages to the freehold by reason of the cutting of the timber, but the evidence does not support this finding.

There are thirteen assignments of error to the decree which confirmed the commissioner's report, but all of these assignments are an outgrowth of, and closely related to, the three exceptions to the commissioner's re-

port and for the purpose of a decision of this case it is only necessary to discuss the three exceptions.

It is strongly contended that Swink and Gresham are not holders in due course of the $40,000.00 note; that it was an accommodation note and that the making of this note by the Granite Hall Farms Corporation was *ultra vires*. In support of this contention it was sought to connect Swink and Gresham with a collateral agreement alleged to have been made between them and Paschall whereby it is claimed that Swink and Gresham would purchase the collateral security consisting of the bonds of Sunbury, Piedmont, the Bugg note and the $40,000.00 note at the public sale and cancel and surrender to Paschall the $40,000.00 note, as soon as they realized from the other securities an amount sufficient to reimburse them for such sums as they would pay on the two notes of Paschall, aggregating $30,000.00 and interest, and the interest on the first lien bonds held by the Virginia Trust Company. It is also contended that the Virginia Trust Company knew of this agreement and acquiesced therein. The commissioner, after hearing the evidence, found that no such agreement was made and that the title to all the securities, including the $40,000.00 note, was vested in Swink and Gresham. From the record it is clear that this finding is abundantly supported by the evidence.

If, as contended, there was an agreement concerning the $40,000.00 note to Paschall, it is significant that the record fails to show that he made any demand upon Swink and Gresham for this note after the time had arrived for the note to be surrendered to him. Under the alleged agreement the note should have been surrendered whenever Swink and Gresham had realized enough from the other securities to reimburse them for the money they had actually paid out in buying the

securities. The securities, including the note in question, were sold by the Virginia Trust Company to Swink and Gresham in August, 1923. During the long interim between the sale of the note in August, 1923, to the time the suit was instituted Paschall made no demand on Swink and Gresham for the surrender of the note. This failure on his part strongly indicates that he had no such agreement with these parties as he contends for. It was Paschall's duty to prove clearly this agreement and he has failed to do so.

■ It is contended that the $40,000.00 note was made by Granite Hall Farms Corporation for the accommodation of Paschall, and that the corporation was without power to make accommodation notes, and that this note is *ultra vires* and void. The record does not support this contention. This note was executed in connection with the refinancing of the joint and several debts due the Granite Hall Farms Corporation and Paschall, and naturally the corporation in that manner received the benefit therefrom. The commissioner, in his report, has this to say: "Paschall and said corporation were both engaged in the purchase and sale of timber * * * Section 3 of the charter of said corporation states that one of its principal purposes was to undertake or underwrite, assume or guarantee the whole or any part of the liabilities of any individual firm, association, company or corporation, now or hereafter engaged in a similar undertaking." The note was not an accommodation note and not *ultra vires*. We are satisfied that the corporation was liable on this note.

The question of the quantity of timber cut and the price thereof, and the damage to the freehold as a result of the cutting, are matters of fact inquired into by the commissioner and his findings thereon are sustained by the evidence. We have reviewed the conclusions of the

commissioner, as set forth in his report, and after a close analysis of all of the evidence returned with the report, it is clear that the report is supported by the weight of the evidence.

■ The legal effect of a report of a commissioner in such a case is set forth succinctly in the case of *Hitt* v. *Smallwood*, 147 Va. 778, 133 S. E. 503, 507, as follows: "The report of a commissioner, when the evidence has been taken in his presence, is entitled to great weight and should not be disturbed unless its conclusions are clearly unsupported by the evidence." Especially is this true when the report has been sustained by the trial court as in the case before us.

The decree is affirmed.

*Affirmed.*