## CIRCUIT COURT OF FAIRFAX COUNTY

Tahir Alaragy

v.

William David Dengler

June 9, 2004

Case No. (Chancery) 181411

BY JUDGE JONATHAN C. THACHER

This matter came on January 30, 2004, for a hearing on the Complainant's Exceptions to the Commissioner's Report. After considering counsels' arguments and reviewing the applicable law, the Court reaches the findings and conclusions stated below.

### I. *Background*

This Suit arises out a Regional Sales Contract for the sale of property owned by the Defendant William David Dengler. The Defendant was to sell the property to Tahir Alaragy. This contract was entered into on June 7, 2002, and stipulated a settlement date of June 30, 2002. The property was to be sold for $220,000.00, with the Complainant obtaining a loan for $176,000.00 and the balance to be paid in cash. On August 20, 2002, an amendment was added to the contract, increasing the purchase price to $230,000 and extending the settlement date to August 31, 2002. However, since August 31, 2002, was a Saturday and the settlement agent, Realty Title Services, Inc. (hereinafter "RTS" ), did not perform settlements on Saturdays, the settlement date was moved to August 30, 2002.

The Complainant applied for financing to complete the purchase through First Empire Mortgage Banc, who secured the financing through Option One Mortgage Company (hereinafter "the Lender" ). See Commissioner's Hearing

Transcript (hereinafter "CHT") at 16, 25. According to the testimony of the president of First Empire Mortgage Banc, Amir Shirazi, the only item needed to approve the Complainant's loan was a copy of the termite inspection report for the Property. *Id.* at 18. The Defendant was to furnish a written report from a pest control firm dated no more than 30 days prior to settlement. See Contract at & 13. The Defendant acquired this report from Jolly Roger Pest Control on August 29, 2002. See Complainant's Exhibit 4. Amir Shirazi asserts that a message was left at the Defendant's home, alerting the Defendant to the fact that the termite inspection report was needed to approve the financing required for the purchase of the Property. See CHT at 19. A fax number was left on the message, detailing where the report could be sent. *Id.* The Defendant brought the termite inspection report to the settlement proceedings on August 30, 2002. *Id.* at 134.

On August 30, 2002, both the Complainant and Defendant came to the offices of RTS to proceed with the settlement. See CHT at 134. However, because the Lender had not yet received a copy of the termite inspection report, the loan was not approved and no paperwork was sent to RTS by the Lender. *Id.* at 20, 79. The Contract states that the Complainant will be in default if he fails to comply with the lender's reasonable requirements in a timely manner. See Contract at & 9(c)(iii). As the Lender did not have the termite inspection report, the loan paperwork was not sent to RTS and the settlement could not be completed. See CHT at 20, 79. After a brief negotiation to extend the settlement date proved to be unsuccessful, the Defendant declared the Complainant in default, stated his intention not to proceed with the Contract, and left RTS with the termite inspection report in hand. *Id.* at 111, 136, 143.

The termite inspection report was faxed to the Lender accidentally by the wife of the Defendant sometime between September 1, 2002, and September 3, 2002. See CHT at 109, 138. The Lender then provided the loan papers and funds to RTS to facilitate settlement, now set for September 4, 2002, at RTS. *Id.* at 23. The Defendant was notified of the settlement but declined to attend. *Id.* at 111. The settlement did not take place.

## II. *Procedural History*

On November 18, 2002, the Complainant filed a Bill of Complaint seeking specific performance of the Contract. The Bill of Complaint alleges that the Defendant breached the Contract by refusing to turn over the termite inspection report to the lender prior to the August 30, 2002, settlement date. Bill of Complainant at & 6. The Complainant further alleges that the Defendant further breached the Contract by not providing the Lender with a

termite inspection report until September 3, 2002, causing the delay in the settlement process and then failing to appear at the settlement scheduled for September 4, 2002. *Id.*

Defendant asserts in his Answer that the termite inspection report was available as of August 29, 2002, and was furnished to the Complainant at the settlement on August 30, 2002, as required by the terms of the Contract. See Answer at & 5. The Defendant also posits that the Contract had expired, as time was of the essence pursuant to paragraph 9 of the Contract and the Complainant had failed to obtain financing prior to August 31, 2002. *Id.*

The Suit was sent to the Commissioner in Chancery, and a hearing was held on September 23, 2003. On December 16, 2003, the Commissioner in Chancery filed his report. See Report of Commissioner (hereinafter "ROC"). The Commissioner opines that the Complainant was not entitled to specific performance, as the Defendant had performed the duties required of him under the Contract, namely that he had furnished a written termite report by bringing the document to the settlement on August 30, 2002. The Commissioner further asserts that the contractual duty to provide the Lender with the termite inspection report lay solely with the Complainant. See ROC at 5. According to the Commissioner, even if Mr. Shirazi had made a phone call requesting the termite report (a claim the Defendant denies), this action does not shift the duty to provide the Lender with this document from the Complainant to the Defendant. *Id.* at 6. The Commissioner concludes that, since time was of the essence, the Complainant's failure to procure and produce the funds necessary to complete the purchase by August 31, 2002, is a bar to awarding him specific performance. *Id.* at 5.

### III. *Summary of Arguments*

The Complainant filed Complainant's Exceptions to the Commissioner's Report (hereinafter "Exceptions") on December 29, 2003. The Complainant sets forth two exceptions. First, the Complainant alleges that the Defendant believed his property was worth well more than the Contract price at the time of settlement and purposely sabotaged the settlement process by failing to furnish, to either the Complainant or the Lender, a copy of the termite inspection report. Exceptions at 2-3. The Complainant argues that to allow such conduct would permit any seller to cause a default in settlement when convenient. *Id.* at 4. Secondly, the Complainant alleges that the Defendant's actions on August 30, 2002, were tantamount to anticipatory breach, since the Contract called for a settlement date of August 31, 2002, while the Defendant declared the Contract void on August 30, 2002. *Id.* at 4-5.

On January 9, 2004, the Defendant filed a Response to the Complainant's Exceptions (hereinafter "Response") to the Report of the Commissioner. The Defendant claims that the only duty imparted to him by the Contract in regards to the termite inspection was to "furnish a written report." See Response at 2. By bringing the report to the settlement, the Defendant asserts that he has satisfied this requirement. *Id.* The Defendant also asserts that he could not have breached the Contract, as paragraph 28 of the Contract states that the settlement was to take place on the prior business day if the contracted settlement date was a Saturday. *Id.* at 4. Therefore, since the Complainant failed to produce the funds necessary to purchase the Property on August 30, 2002, the actions of the Defendant could not amount to anticipatory breach. *Id.* at 5.

## IV. *Analysis*

While a trial court is given discretion to review the Commissioner's findings, "it cannot arbitrarily disturb the report, if it is supported by sufficient proof." *Hudson v. Clark,* 200 Va. 325, 329, 106 S.E.2d 133, 136 (1958). However, in suits of equity, "the chancellor is judge of both the law and facts, and is presumed to be more competent to pass upon the evidence and draw correct conclusions from it than the commissioner." *Hitt v. Smallwood,* 147 Va. 778, 785, 133 S.E. 503, 506 (1926). The Court must determine whether the Complainant is entitled to specific performance in light of the Commissioner's Report.

Specific performance of a contract "is not a matter of absolute right but rests in a sound judicial discretion." *Cranford v. Hubbard,* 208 Va. 689, 695, 106 S.E.2d 760, 764 (1968). For a complainant to be awarded this remedy "he must show that he has been able, ready, prompt, eager, and willing to perform the contract on his part." *Id.* A delay in performance by the party seeking equity is not a bar to specific performance assuming the failure to perform was caused by the delay or default of the defendant, even if the contract explicitly calls for punctuality. *Beckett v. Kornegay,* 150 Va. 636, 645, 143 S.E. 296, 299 (1928). A purchaser of real property may seek specific performance as soon as the vendor has "notified the purchaser that he will not fulfill the contract." *Matney v. Barnes,* 116 Va. 713, 715, 82 S.E. 801 (1914) (citing *White v. Dobson,* 58 Va. (17 Gratt.) 262 (1867)). Additionally, the purchaser may seek specific performance without tendering the purchase price for the property if the vendor has shown that their intention is not to honor the contract. *Id.*

In *Matney,* the complainant, the purchaser of the property, was prevented from fully performing his duties under the contract by the defendant, the

owner and vendor of the property, who prevented a surveyor from entering the property. *Matney*, 116 Va. at 714, 82 S.E. at 801. Under the contract, the complainant was required to have a surveyor enter the property of the defendant to ascertain the acreage of the land in order to determine the price to be tendered. *Matney*, 116 Va. at 715, 82 S.E. at 801. The complainant was anxious, ready, and willing to perform all other duties as required under the contract. *Matney*, 116 Va. at 714, 82 S.E. at 801. Not only did the defendant prevent the complainant from performing under the contract, he also clearly indicated to the complainant his intentions not to perform his duties under the terms of the contract. *Matney*, 116 Va. at 715, 82 S.E. at 801. The Court held that because the defendant had clearly stated his intentions not to go through with the contract and that the defendant had prevented the complainant from achieving full performance, tendering the actual purchase price was not a prerequisite to granting the complainant specific execution of the contract. *Matney*, 116 Va. at 715, 82 S.E. at 801.

The Defendant's failure to furnish the termite report is analogous to the behavior of the Defendant in *Matney*. By failing to provide the report, thereby preventing the Complainant from acquiring the necessary financing to purchase the Property, the Defendant has prevented the Complainant from achieving full performance under the terms of the Contract. These actions mirror those of the defendant's in *Matney*, who prevented the complainant from full performance by precluding a surveyor from entering his property. Much like the complainant in *Matney*, the Complainant in the present case had done everything else within his power to otherwise perform. The Defendant's actions in the present case are akin to the actions of the defendant in *Matney*; both clearly announced their intentions not to proceed with the Contract, actions tantamount to anticipatory breach. Utilizing the courts rationale in *Matney*, it is not necessary in such a situation for the Complainant to actually tender the purchase price in order to seek specific performance.

Although paragraph 9 of the Contract does expressly state that time is of the essence, the fact that the settlement was not completed does not bar the Complainant from receiving the remedy of specific performance. A failure to perform by the Complainant caused by the delay or default of the defendant, even if the contract explicitly calls for punctuality, will not bar the remedy of specific performance. The Defendant in the present case did not furnish the written report to the Complainant or the Lender. This delay prevented the Complainant from performing. As the *Beckett* court opined, this does not bar the Complainant from utilizing the remedy of specific performance, as he was otherwise ready, willing, and eager to perform. The termite inspection report was the final roadblock in facilitating settlement.

## V. *Conclusion*

Because the Complainant was ready, willing, and eager to perform his duties as set forth in the Contract, the delay in the Complainant's performance was due to the actions of the Defendant, and the Defendant clearly stated his intention not to honor the Contract, the Complainant should receive the remedy of specific execution of the Contract, notwithstanding the Complainant's failure to tender the purchase price. Therefore, the Complainant's exceptions to the Commissioner's Report are sustained and the Commissioner is overruled. The Complainant is entitled to the specific performance of the parties' contract for the sale of the property.

Additionally, paragraph 23 of the Contract states that the "prevailing party will be entitled to receive reasonable attorney's fees." See Contract at & 23. Therefore, the Complainant is entitled to attorney's fees which are deemed reasonable by this Court. The Complainant is instructed to produce an affidavit of reasonable attorney's fees, properly itemized, showing the number of hours and counsel's hourly rate. Please submit this affidavit to counsel for the Respondent. If counsel for the Respondent will agree that the attorney's fee affidavit is reasonable, the amount may be included in the Order.