## Staunton.

### GISH'S EXECUTOR v. JAMISON.

#### SEPTEMBER 15, 1898.

Absent, Cardwell, J.

1. SPECIFIC PERFORMANCE—*When Refused.*—An application for specific performance is addressed to the sound judicial discretion of the court, governed by established principles. The party seeking performance must show himself to have been ready, prompt, willing, and eager to perform the contract on his part. Default and delay on the part of the party seeking performance, indicating an intention to perform or abandon the contract as may appear to his advantage, accompanied by a change in values without the fault of the other party, and likewise absence of good faith are sufficient reasons for a court of chancery to refuse to enforce performance.

2. CONTRACTS—*Time of Performance—Reasonable Time—Conditions Precedent.*—A contract to make the cash payment for land on delivery of a deed to the property, but which also provides that the cash payment is to be made as soon as the purchasers to whom the vendee has sold land make theirs to him, is a contract to pay the cash payment in a reasonable time, though such purchasers never pay, and is not a condition precedent to the payment by said vendee.

Appeal from a decree of the Hustings Court of the city of city Roanoke pronounced December 11, 1895, in a suit in chancery wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

*L. C. Hansbrough* and *H. T. Hall,* for the appellant.

*P. Lockett,* for the appellee.

RIELY, J., delivered the opinion of the court.

On April 12, 1890, J. A. Jamison and S. H. Gish entered into a contract in writing, whereby Jamison sold to Gish a certain house and lot, the residence of the former, in the city of Roanoke, for the sum of $16,000, paid and to be paid as follows: $10 cash in hand, $7,990 on delivery of the deed to the property, and the residue ($8,000), with interest, iu one year from date of the contract. The contract concluded with this clause: " The cash payment to be made as soon as the Fairmont Land Company makes their cash payment to the said Samuel H. Gish."

The Fairmont Land Company, though chartered, was never organized. By it was meant W. P. Moomaw and his associates, who, on March 31, 1890, twelve days previously, had purchased from S. H. Gish and wife sixty acres of land within the corporate limits of Roanoke city for the price of $80,000, of which sum $15,000 was to be paid when a deed should be made to the land conveying to the purchasers a valid title in fee-simple. Gish and wife tendered to Moomaw and his associates a deed of conveyance, executed and acknowledged pursuant to the contract of sale. They refused to accept the deed and pay the purchase money, or any part of it, upon the alleged ground that Gish and wife could not convey a perfect fee-simple title. Upon their refusal, Gish and wife, in June, 1890, brought suit in the Hustings Court of the city of Roanoke against Moomaw and his associates to compel them specifically to perform their contract. The court, at the hearing, dismissed the bill, but on appeal to this court, the decree of the Hustings Court was reversed on September 22, 1892, and the vendors adjudged to be entitled to have specific performance of the contract. A rehearing having been granted, the court, on April 13, 1893, adhered to its former decision. *Gish and Wife* v. *Moomaw et als.*, 89 Va. 345, 376. In pursuance thereof, the Hustings Court, at its November term, 1893, entered a decree against Moomaw and his associates for the purchase price of the land, which, however, has proved unavailing. Execu-

tions were issued upon the decree, but were returned "no effects," and no part of the purchase money has been paid.

After Moomaw and his associates refused to accept the land from Gish and wife, and the latter had instituted suit to compel performance of the contract, Jamison brought suit to rescind the sale of his house and lot to Gish. This suit, at the hearing, was dismissed by the court. Jamison not only acquiesced in its dismissal, but, so far as the record discloses, thereafter made no demand upon Gish that he perform the contract, nor took any action to compel its performance until the institution of this suit on October 31, 1894, more than four years after the sale, and upwards of three years after the last of the purchase money was due and payable.

Every application for the specific performance of a contract is addressed to the sound judicial discretion of the court, governed by established principles. These principles require, among other things, that the party seeking the performance must show himself to have been ready, prompt, willing, and eager to perform the stipulation of the contract on his part. *Bowles* v. *Woodson*, 6 Gratt. 75; *Ford* v. *Euker*, 86 Va. 75; *Dunsmore* v. *Lyle*, 87 Va. 391; *Powell* v. *Berry*, 91 Va. 568; and *Darling* v. *Cumming's Ex'or*, 92 Va. 521. It is also well settled that the court will not decree specific performance where the party seeking it has been guilty of such delay or conduct as to justify the presumption of an abandonment of the contract, or where to do so would work a hardship on either party, not only because of unfairness in the terms of the contract, but also where the applicant has been in default and the hardship is caused by subsequent events, or is the result even of collateral circumstances. The party seeking performance must not have remained quiet, or held himself aloof so as to enforce or abandon the contract as events might prove advantageous. 2 Minor's Inst. (3d Ed.) 898; Pomeroy on Con., secs. 177, 185, 408; *Willard* v. *Tayloe*, 8 Wall. 557, 566; *Booten* v. *Scheffer*, 21 Gratt. 474, 497; and *Anthony* v. *Leftwich*, 3 Ran.

238. In *Darling* v. *Cummings, supra,* Judge Harrison used the following language: " The rule may be laid down as general, applying to either the vendor or vendee, that where there has been a change of circumstances or relations which renders the execution of the contract a hardship to the defendant, and this change grows out of or is accompanied by an unexcused delay on the part of the plaintiff, the change and delay together will constitute a sufficient ground for denying a specific performance, when sought by one thus in default."

Applying the foregoing principles to the case before us, the complainant was not entitled to have specific performance of the contract, and the Hustings Court erred in decreeing its execution. From the time of the sale until the institution of this suit, he gave no evidence of a willingness or readiness to comply with his part of the contract, nor manifested any desire to have it performed by his vendee. He was in possession of the property at the time of the sale, and has ever since remained in possession. It does not appear that he at any time offered to give possession, or that he tendered or offered to make a deed to the property, upon the delivery whereof he was entitled to exact the cash payment. The only disposition manifested by him with respect to the contract previous to the institution of this suit was to abandon it by bringing a suit to rescind it. And this he did at a time when the property had risen in value from $16,000, the price at which he sold it to Gish, to $24,000. Failing in his suit to rescind, he thereafter remained quiet, and made no demand for the performance of the contract, nor took any steps to compel its execution, but, as heretofore stated, suffered to elapse more than four years after the sale, and upwards of three years after the last of the purchase money was due and payable before manifesting any disposition to perform the contract himself or have it performed by his vendee, and then did so at a time when the property had fallen in value to about one third of the price at which he sold it. A court of equity will not grant specific

performance where there has been an absence of good faith. It will refuse relief where the party seeking it is in default, and by delay has indicated an intent to perform the contract or abandon it as the property should rise or fall in value. Where a vendee has been guilty of such delay in completing the contract and seeking its performance as has been the vendor in this case, a rise in the value of the land during the interval is a fact of much weight in tending to show that the vendee's delay was speculative, and for the very purpose of waiting such a turn favorable to himself, and not less is a fall in the value of the land indicative of a speculative purpose in a vendor who has delayed completing a contract of sale and demanding its execution.  .

Jamison, so far as respects the cash payment, had as much right to ask specific performance of his contract with Gish, when, in 1890, he brought suit to rescind it, as in 1894 when he instituted this suit to compel its specific execution. The cash payment was as much due then as it was at the institution of this suit. The sale was for cash as to one half of the purchase price, and the subsequent and concluding clause of the contract, that it was to be made as soon as the Fairmont Land Company made their cash payment to Gish, was not intended to alter the terms of the sale, or to make the receipt by Gish of the cash payment from the Fairmont Land Company a condition precedent to the payment of that due from him to Jamison. The cash payment of the company has never been made, but at the time of the sale from Jamison to Gish it was expected by both of them that it would be made within a few days, just as soon as Moomaw and his associates could examine and be satisfied as to the title to Gish's property. But although not made at all, or if not made according to their expectation, that from Gish was payable within a reasonable time, and Jamison, after a reasonable delay, had the right to exact its payment.

It was conceded that Jamison knew all about the sale from

Opinion.

Gish to Moomaw and his associates, and that he was well aware that Gish had no means of paying him except from the proceeds of that sale. Upon that source each relied for the fulfilment by Gish of their contract, but, wholly contrary to their mutual expectation, that sale has proved fruitless, and the land itself has immensely fallen in market value, as has also that sold by Jamison to Gish. In view of the delay of Jamison in seeking specific performance of his contract with Gish, and the evidence given by him previous to the institution of this suit of an abandonment of it, our conclusion is that, under the changed conditions that have taken place during the interval of delay, which conditions are in no degree attributable to any default of Gish, but were produced by circumstances over which he had no control, specific execution of the contract sought to be enforced would be harsh, oppressive, and very inequitable.

The decree of the Hustings Court must therefore be reversed and the bill of the complainant be dismissed, leaving him to pursue any remedy he may have at law.

*Reversed.*