# Richmond

## Scott Boatright v. Emmette Peaks.

March 13, 1950.

Record No. 3620.

Present, All the Justices.

The opinion states the case.

*Coleman & Coleman,* for the appellant.

*E. H. Richmond* and *L. P. Fraley,* for the appellee.

STAPLES, J., delivered the opinion of the court.

The appellee, Emmette Peaks, instituted this suit in equity in the Circuit Court of Scott county against the appellant, Scott Boatright. His bill alleges that he purchased from the appellant a certain tract of land in Scott county containing about thirteen acres, that he had paid or offered to pay to the appellant the entire balance of the purchase price, but that the appellant had refused to accept it. The amount was later deposited by appellee with the clerk of the court subject to the court's order. The relief sought was that the appellant be required specifically to perform the contract by conveying the land in question to the appellee.

The answer and cross bill of the appellant alleges that, by reason of his failure to promptly pay the deferred purchase money, the appellee had forfeited all his rights in the contract. It prays that the court so decree and remove the cloud upon appellant's title which arose from the recording of the contract.

The cause was heard upon the pleadings and depositions of both parties. "After mature consideration" the court granted the specific performance as prayed for in appellee's bill.

The contract, in form a title bond, is as follows:

"This Title Bond made the 13th day of Nov. 1937 by and between Scott Boatright party of the first part and Emmette Peaks party of the second part, both of Scott County, Va.

"Witnesseth: That for and in consideration of the sum of $165.00 One Hundred & Sixty-Five dollars paid and to be paid as follows: That is $22.50 in hand, the balance in equal payments of $10.00 per mo. as witnessed by waived notes bearing interest from date.

"The party of the first part has bargained and sold to the party of the second part, that certain tract or parcel of land lying and being in Scott County" (description omitted). "The party of the first is to retain a vendors lien on said land until paid. The party of the second is to turn over to

the party of first the above land if not paid for within a reasonable length of time after the last note is due. The party of the first part agrees and binds himself to make a Deed to the above land when paid for.

"Witness our hand and seal the day and date above written."

It is undisputed that the appellee made the cash payment at the time of the execution of the contract, executed the notes, under seal, and also paid the first eight deferred purchase money notes. The appellant delivered possession of the land, which was all woodland, to the appellee, who leased part of it to a tenant and the tenant cleared about one-fourth of an acre and used it as a truck patch. A short time before the ninth note became due, the appellee became seriously sick, entered a hospital at Kingsport and remained in ill health for about five years, going to the hospital every week for treatment during a greater part of the time.

According to the testimony of the appellee and his wife, the appellant made no demand upon the appellee during his illness to make any additional payments on the remaining six deferred purchase money notes, though appellant testified he made repeated demands. For a period of about twenty months while the notes were in default, from June 3, 1942, to March 24, 1944, the appellant was away from home, having been inducted into the United States Army. About five or six months after his return, the appellee went to his home and offered to pay the balance due on the purchase money notes. Appellant declined to accept it. Appellant testified that the appellee "asked me how about this land, he said will you make a deed for it if I pay off. Said I don't know still have those notes and I said I would study about it—you know what that contract said, been a long time and think the contract has run out."

Upon delivery of the title bond and possession of the land to the appellee, the appellant thereafter held the legal title as trustee for the appellee, and the appellee was a trustee for the appellant as to the purchase money. The

general rule is that the vendor, under such circumstances, has a vendor's lien upon the land. *Lewis* v. *Hawkins,* 23 Wall. (90 U. S.) 119, 23 L. ed. 113. See also 55 Am. Jur., Vendor and Purchaser, section 447, page 852. *Cf. Sale* v. *Swann,* 138 Va. 198, 208, 120 S. E. 870.. It is significant that the title bond given by appellant to appellee expressly reserves a vendor's lien.

There is no provision in the title bond for forfeiture of the rights of the vendee solely because of default in the payment of the purchase money notes. The contract contemplates that, in the event of such default for more than a reasonable time, the appellee would, upon request of the appellant, turn back the land to him. This requires affirmative action on the part of the appellee, but it could be expected only in the event he agreed with the appellant that the default had extended unreasonably long. If the appellee did not agree, the appellant would be driven to seek relief in the courts.

What is a reasonable length of time depends upon the facts and circumstances of each case. The appellant could, of course, waive prompt payment of the last six notes due to. the serious illness of the appellee and his inability to pay them. If the appellee's testimony is to be accepted, that the appellant made no request for any further payments after the ninth note became due, it may be reasonably construed as acquiescing in appellee's failure to make any payments during the time of his illness. The appellant does not claim to have notified the appellee at any time of his intention to rescind the contract, or to have requested a return of the property. In fact, his own testimony shows that he had reached no decision in the matter. During all the time that the appellee was in default, the appellant had an election whether to seek to terminate the contract or to enforce the payment of the purchase money notes or bonds. Until he did actually make such election, the appellee was in rightful possession of the property. 56 Am. Jur., p. 850. Furthermore, it is clear that the title bond itself does not

by its terms expressly make the time of the payment of the notes essential. In equity it is not ordinarily deemed as of the essence. If the appellant had desired to make time of the essence, it was incumbent upon him to give the appellee notice as to when the notes must be paid. If such notice had been given and the time fixed therein had been reasonable, then the appellee would have been obligated to make the payments within the time prescribed. *Boston* v. *Shackelford*, 162 Va. 733, 755, 175 S. E. 625. As said in that case: "* * * What is important is this: There must be notice before time can be made of the essence where it was not a part of it originally. * * *."

Under the circumstances here, it is manifest that, in fairness to the appellee, such a notice should have been given to enable him to protect his equitable ownership of the property. He had already paid 62% of the purchase money, and, if he had been informed of the fact that it was necessary to complete the payment by a definite time, he might have been able either to arrange a loan on the property for enough to take up the notes, or else he might have secured a purchaser for it. At least he would have had an opportunity to try to do so. On the other hand the appellant's vendor's lien was security for the payment of the deferred purchase money.

The appellant contends that the property in question has increased in value, and that the effect of the decree of the court is to have permitted the appellee to speculate upon the chances of its proving to be a more advantageous bargain. Therefore, it is argued, since applications for specific performance are addressed to the sound discretion of the court, it is inequitable to permit the appellee to profit by the change in values. The appellant relies upon the following cases: *Chilhowie Iron Co.* v. *Gardiner*, 79 Va. 305; *Darling* v. *Cumming*, 92 Va. 521, 23 S. E. 880; *Gish* v. *Jamison*, 96 Va. 312, 31 S. E. 521; *Scott* v. *Albemarle Horse Show Ass'n*, 128 Va. 517, 104 S. E. 842; *Griscom* v. *Childress*, 183 Va. 42, 31 S. E. (2d) 309.

The facts in the case at bar are essentially different from those in any of the above cases. They were executory contracts in all respects. Here the contract on the part of the appellant was partially performed by the appellant by delivering possession of the property, and by the appellee by payment of 62% of the purchase price. Furthermore, the appellant took no steps to enforce his vendor's lien or to have the possession of the property restored to him by the appellee. Nor is the position of the appellant that the appellee was speculating upon an enhancement of the value of the property supported by the evidence. Since the appellee had already paid nearly two-thirds of the purchase price, there was no need for a prospective increase in value to provide an incentive to pay the balance. The uncontradicted testimony of the appellee and his wife was that his failure to pay the remaining six notes promptly was due to sickness. The appellee was illiterate and his only occupation was as a day laborer. The evidence supports his claim that he was incapacitated by illness.

The decree of the circuit court granting the appellee specific performance must be affirmed.

*Affirmed.*