## Richmond

WILLIAM MERRITT PARKER, JR. v. SUSIE MAE PARKER HARCUM, ET AL.

November 30, 1959.

Record No. 4988.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*R. Colston Christian* and *Braden Vandeventer, Jr.* (*Christian, Marks, Scott & Spicer; Vendeventer, Black & Meredith*, on brief), for the appellant.

*Frank R. Watkins*, for Susie Mae Parker Harcum, et al.

*Archie L. Boswell*, for Grover C. Franklin, Adm'r, etc.

BUCHANAN, J., delivered the opinion of the court.

The question presented on this appeal is whether William Merritt Parker, Jr., the appellant, is the legitimate son of William Merritt Parker, deceased, within the terms of § 64-6 of the Code, which provides:

"If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, if recognized by him before or after marriage, shall be deemed legitimate."

William Merritt Parker, the alleged father of the appellant, died intestate in May 1955. His administrator brought this suit for the purpose, among others, of having the court determine who were the heirs at law and distributees of his estate. After an *ore tenus* hearing, the court below held that the appellant had failed to carry the burden of proof that he is the son of William Merritt Parker, deceased, and that the deceased acknowledged him to be his son according to the requirements of the statute. Consequently it was held that the appellant was not an heir of the deceased and was not entitled to inherit from him, and that his heirs at law and distributees were his eleven brothers and sisters. The appellant in his assignments of error challenges the validity of this holding and contends that the evidence compels a finding that the appellant was the son of deceased and was so recognized by him. The material evidence for the appellant was as follows:

The appellant was born July 9, 1927, in a Norfolk hospital. His mother is Lucille Davis Giddings, who was Lucille Davis at the time of the birth. On the records of the hospital, from information furnished by the mother, the name of the child was stated to be William Merritt Parker and the name of the father was stated to be William Merritt Parker.

Mrs. Giddings, formerly Lucille Davis, testified that she first met William Merritt Parker, Sr., in 1925. Their affair began with a date once or twice a week and then until a short time before the baby came they were together every night. She was asked whether she informed Parker she was going to have a baby and replied that she tried to call him on the telephone several times without success, and then wrote him but he did not come to see her until after 12 o'clock on the night after she entered the hospital. She then asked him, "Well, do you know why you are here?" He replied, "Yes, the baby. * *

Why didn't you get in touch with me sooner?" After some further conversation he stated, "I will be here tomorrow night without fail and we will be married." She said she did not see him any more. She gave the child the name of William Merritt Parker, Jr., because William Merritt Parker, Sr., was his father. The birth certificate of the child filed July 19, 1927, shows his name as William Merritt Davis. Her explanation was that there had to be the signature of both parents before a birth certificate would be issued. She testified emphatically that Parker was the father of her child.

On July 11, 1927, two days after the birth of the child, a warrant was issued against William Merritt Parker, Sr., charging him with the seduction of Miss Davis under promise of marriage. This warrant was dismissed the following August on jurisdictional grounds. Thereafter Parker left the State and after a year or more was found in North Carolina and brought back for trial. On October 9, 1928, another seduction warrant was issued against him on which he gave bond for his appearance before the circuit court. He was later indicted by a grand jury for seduction, to which he entered a plea of not guilty and his trial before a jury began in February 1929. On the second day of the trial, after the evidence had been heard and the case argued, the jury retired to consider their verdict. Before they returned a verdict an agreement was reached by the parties pursuant to which a marriage license was obtained and Lucille Davis and William Merritt Parker were married in the courtroom. The marriage was pleaded by Parker in bar of the prosecution, Code § 18-53, his plea was sustained and the case was dismissed.

A brother-in-law of Parker's, witness for the appellees, testified that he was in the courtroom when the word came that the jury could not agree. The question of the expense and trouble of another trial was discussed by the attorneys, the attorney for Miss Davis consulted her and brought back the message, "Instead of going through court again, marry me so the child will have a name and give me $500." The witness added "that would go for her funds and the lawyers' funds, either one you want to take it."

After the trial was thus concluded Parker and his wife left the courtroom through different doors, never lived together or had any communication with each other, and he made no contribution to the support of the child or its mother up to the time of his death in 1955.

David Corbell Cotten, a real estate broker, testified that he was foreman of the jury to which the seduction case was submitted. He

recalled the names of some of the other jurors, of the prosecuting attorney and the judge and what the case was about. He testified that after the jury deliberated a while they reached a verdict of guilty, but after the vote was taken one of the jurors said he could not go along with it. Cotten and another juror advised the judge in the presence of the attorneys what had happened, and were told to go back into the jury room until they heard further from the judge. Some ten or fifteen minutes later, at the invitation of the judge, the jurors returned to the courtroom and witnessed the marriage. Cotten testified that after the marriage and while they were "getting ready to break up" they heard Miss Davis say she was marrying Parker only for a name for the child, that she did not want any support from him and did not care if she never saw him again; and that Parker said, "You have gotten what you wanted. You have gotten the father. I am the father of the child," and that he thought Parker added, "I hope you are satisfied," but that he did not get the last words. On cross-examination he was emphatic about what Parker said, stating, "I gave it to you just like I heard it."

On September 21, 1931, Mrs. Parker filed suit for divorce against Parker in which the bill alleged that she and Parker were married February 28, 1929 [the date the criminal trial ended]; that there was born to her and Parker one child, "..................Parker," who had been in her control and care since the marriage, and that Parker had deserted her on the day of the marriage. Parker was personally served with process in this divorce suit. He did not appear or defend but was in the office where the depositions in the case were to be taken prior to the time Mrs. Parker arrived there. A divorce *a mensa* was granted to Mrs. Parker in that suit by decree of June 2, 1932, in which "the custody of William Merritt Parker, minor child of said parties," was awarded to her, without any right of alimony to her. This was later enlarged into an absolute divorce.

William Merritt Parker, Jr., the appellant, testified that he had been led to believe that his mother and father were simply divorced during his infancy, but in 1952 when he married a question came up about his parentage; that he went to Norfolk and looked into the divorce records, then located his father who was working in a store in Norfolk and asked him if he knew Lucille Davis. Parker replied that he knew a Lucille Davis who lived years ago in Suffolk. The appellant then inquired whether he was ever married to her and Parker answered yes; that he then asked whether he ever had any

children and Parker replied, "I had a son." The appellant then said, so he testified, "Well, I am William Merritt Parker, Jr.," to which Parker made no answer.

The appellees introduced the evidence of five of the brothers and sisters of William Merritt Parker, Sr. It was to the effect that Parker always said the child was not his; that he did not want to talk about it; that he said many times that the child was not his; that Parker never contributed anything to the support of the child; that they were never together and he always denied that he was the father. The administrator, who was a nephew of Parker's testified that he lived in the same house with the deceased for fifteen or twenty years and never heard of the existence of William Merritt Parker, Jr. A brother-in-law of the deceased testified that the deceased lived at his house during the 1929 trial and until late in that year, and the only thing that was said about it was that Parker denied being the father of the child and said it was not his.

The facts necessary to establish legitimacy under the statute, § 64-6, *supra*, are (1) that William Merritt Parker was the father; (2) that he and the mother afterwards married; and (3) that he recognized appellant as his son before or after the marriage.

As used in the statute, "recognize" means to acknowledge, accept, admit, or own the child. *Hoover* v. *Hoover*, 131 Va. 522, at 527 and 541, 105 S. E. 91, 92, 109 S. E. 424; *Harmon* v. *D'Adamo*, 195 Va. 125, 128, 77 S. E. 2d 318, 319.

On these essential points the substance of the evidence for the appellant is: (1) The explicit testimony of the mother that Parker was the father, and the strong inference of his own admission of that fact in his conversation with her in the hospital before the child was born, coupled with his promise to return the next night and marry her, together with his inferential admission of paternity made to the appellant as testified to by him; (2) the fact of marriage with the mother, which ended the seduction prosecution against him; (3) his express acknowledgment that he was the father made at the conclusion of the criminal trial in the presence of Cotten, the foreman of the jury; and (4) his failure to deny the charge in the divorce suit that the appellant was his son, afterwards recorded as a fact by the decree entered in that suit.

While it may be argued that there is some inherent weakness in some of this testimony, none of it is incredible and it stands without

contradiction, unless to be found in the subsequent denials of parentage made by Parker as testified to by his relatives.

The proper conclusion in the case thus presented is determined by the case of *Hoover* v. *Hoover, supra,* in which there were two opinions, the first at page 524 of 131 Va. and the second on rehearing at page 541. The facts of that case bear close resemblance to this in many points. In the first opinion the decree of the trial court in favor of the child was reversed on the ground that there was not adequate proof of recognition. In the opinion on rehearing that holding was reversed and the decree of the trial court affirmed because the evidence and inferences in favor of the child were insufficiently emphasized in the first opinion. In the second opinion, in respect to the denials of parentage made by the putative father in that case, the court said:

"* * The vital question, as has been stated, is whether or not Benjamin Hoover ever, by words or conduct, acknowledged, accepted, admitted, or owned, that Winnie Hoover was his child. It makes no difference how often he repudiated his paternity, for the law so favors legitimacy rather than illegitimacy that if, at any time, he unequivocally recognized her as his child, she is legitimate and his heir at law. * *." 131 Va. at 541, 109 S. E. at 424.

In reference to the weight to be given to the marriage performed in that case as in this to end a seduction prosecution, it was held:

"The inferences to be made from a marriage of this sort, where the only force applied is the force which the statute itself applies, while not conclusive, have a significance far greater than where the marriage is brought about hastily by physical force and threats of personal violence. * *." 131 Va. at 542, 109 S. E. at 424.

Again, "His wife, the child's mother, whose testimony must always be considered in such cases, testifies to the fact of such recognition emphatically and unequivocally. * *." 131 Va. at 543, 109 S. E. at 425.

Of the testimony of the witness in that case who testified, as did the witness Cotten in this case, that the alleged father in express language recognized the child as his own, the court said:

"* * It cannot be discarded without imputing perjury to this witness, who is entirely disinterested, and her opportunities for such conversations are supported by other admitted facts and circumstances. That Hoover, on various other occasions denied to his relatives and friends that he was the father of the child is inconsistent but not in conflict therewith. It is not unusual, however, for men overtaken

in such a fault as that with which Hoover was accused, to deny their guilt circumstantially, vigorously and frequently. The question, however, is not how often he denied it, but whether at any time he recognized Winnie Hoover as his child." 131 Va. at 545, 109 S. E. at 425.

While great weight, as we have repeatedly held, attaches to the finding of the trial court, based on an oral hearing of the testimony, yet if it is plainly wrong or without evidence to support it, it cannot stand. Code § 8-491.

The required conclusion here, in the language of the *Hoover* case, is that William Merritt Parker by his conduct, by his silence when he should have spoken, and by his words, recognized the appellant as his child; and such conclusion accords with the manifest policy of the seduction statute to require the seducer to respect his responsibility to the community, his legal duty to his wife, "and his obligation to remove the bar sinister from the innocent child of his loins, who is entitled to bear his name." 131 Va. at 546, 109 S. E. at 425.

We accordingly hold that William Merritt Parker, Jr., the appellant, is the legitimate son of William Merritt Parker, deceased, and the decree appealed from adjudicating to the contrary is therefore reversed, but only in this respect, and the cause is remanded for further proceedings in keeping with the views herein expressed.

*Reversed and remanded.*