## Staunton

WILBUR LEO SIMS, ET AL. v. JESSIE L. NIDIFFER.

August 31, 1962.

Record No. 5457.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*J. Randolph Davis* (*Reuben E. Spandorfer; David & Boyd*, on brief), for the appellants.

*Albert S. Lewis* and *Sidney Sacks,* for the appellee.

I'Anson, J., delivered the opinion of the court.

This is an appeal by Wilbur Leo Sims and Martha J. Sims, appellants, from a decree dismissing a bill in equity and denying specific performance of a contract for the purchase of certain real estate from Jessie L. Nidiffer, appellee.

The sole question presented is whether or not the chancellor erred in denying specific performance of the contract and dismissing appellants' bill.

The evidence, which was heard *ore tenus,* shows that by a written contract dated April 30, 1960, the appellants agreed to purchase from the appellee a house and lot situated in the city of Norfolk for the sum of $10,000, of which $1,000 was to be paid in installments of $100 per month, commencing on May 1, 1960. The $9,000 balance was to be evidenced by a note in that amount, secured by a purchase money deed of trust on the property, payable at the rate of $85 per month beginning March 1, 1961. The note and deed of trust were to be executed on February 1, 1961, or as soon thereafter as the title could be examined and the papers prepared. The appellants also agreed to paint the interior and exterior of the house before settlement at their own expense.

The appellants took possession of the property and made the monthly payments of $100, but not always on time, to Mrs. Charles Day, a real estate broker acting as agent for the appellee in the transaction. The last payment, though due on February 1, 1961, was not made until March 6, 1961. At that time the appellants had substantially completed all of the interior painting but had not made much progress on the exterior painting due to weather conditions. The appellee agreed that the completion of the painting could be postponed.

On March 6, 1961, Mrs. Day presented to the appellants a proposed note and deed of trust which provided for monthly payments of $85 plus interest. The appellants objected to the payment provisions and the appellee agreed to change the instruments to provide for the interest to be included in the $85 payments. The parties then agreed that settlement would be made on April 1, 1961, and that the March and April payments under the deed of trust could be made on that day.

On March 27, 1961, the appellants obtained from their attorney

the proposed note and deed of trust, which had been held by him for title examination, and delivered them to Mrs. Day to make the changes that had been agreed upon. At that time the appellants paid their pro rata share of the taxes and the premium on the fire insurance policy on the house, and Mrs. Day delivered the policy to them.

A day or two later Mrs. Day called Mrs. Sims and reminded her that settlement was to be made on April 1. However they agreed, since April 1 was in the middle of the Easter week end, that settlement would be postponed. Mrs. Day testified that they agreed on April 3 as settlement date, but Mrs. Sims stated that they did not agree at that time on a definite date.

On April 5, 1961, the corrected deed of trust and note were delivered by Mrs. Day to the appellants' home and were left with their son. Mrs. Day testified on direct examination that she delivered the instruments to the appellants solely for the purpose of keeping her promise to the appellee, Mrs. Nidiffer. However, she admitted on cross-examination that she delivered them to be executed by the appellants. The following appears in the record from the testimony of Mrs. Day:

"Q. * * * and you called Mrs. Sims and told her you were going to send them by the house so that they could get them executed preparatory to making a settlement?

"A. That is right."

On the night of April 6, 1961, a fire occurred and caused considerable damage to the house, which was fully insured. The appellee visited the property the next day, and upon request the insurance policy was delivered to her in order that she might notify the insurance company. At that time she made no indication to the appellants that she intended to rescind the contract.

On April 8, 1961, the appellants delivered to Mrs. Day the executed deed of trust and note and a check for $170 covering the March and April payments. She refused to accept the instruments, and stated that the appellee had told her after the fire not to accept any papers in connection with the sale.

The chancellor found from the evidence that the appellants breached the contract when they failed to consummate the sale on April 3 and were not entitled to have it enforced.

On this appeal the appellee says that specific performance of a contract is not a matter of right but rests in the sound discretion of the trial court, and that since the decree of the chancellor was

entered on conflicting evidence heard *ore tenus* it has the same weight as a jury verdict and should not be disturbed.

On the other hand, the appellants contend that the evidence does not support the chancellor's decree. They argue that time was not of the essence under the contract of sale, and, even if it were, it was waived by the conduct of the appellee and her authorized agent, and that rescission of the contract should not be allowed because the appellants were in possession of the property and had made extensive improvements.

It is true that specific performance in equity is not a matter of right but rests in the sound discretion of the chancellor. However, it is also true that the discretion is to be controlled by the established doctrines and settled principles of equity. Generally, where a contract for sale of real estate in its nature and circumstances is unobjectionable, it is as much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to award damages for its breach. *Pond* v. *Fisher*, 201 Va. 542, 551, 112 S. E. 2d 147, 154-155; *Bond* v. *Crawford*, 193 Va. 437, 444, 69 S. E. 2d 470, 475; 17 Mich. Jur., Specific Performance, § 4, pp. 8, 9, 10.

It is also true that the decree of the chancellor determining questions of fact on conflicting evidence heard *ore tenus* has the same weight as the verdict of a jury. *Barnes* v. *Craig*, 202 Va. 229, 234, 117 S. E. 2d 63, 67; *Rogers* v. *Runyon*, 201 Va. 814, 816, 113 S. E. 2d 679, 680. But if the decree is plainly wrong, or without evidence to support it, it will not be permitted to stand. *Parker* v. *Harcum*, 201 Va. 441, 417, 111 S. E. 2d 449, 453; Code § 8-491.

In equity, time is not usually regarded as of the essence in contracts for the sale of real estate, unless its language expressly indicates such intention, or it necessarily follows from the conduct of the parties or the nature and circumstances of the agreement. *Beckett* v. *Kornegay*, 150 Va. 636, 640, 143 S. E. 296, 297; *Hamilton* v. *Newbold*, 154 Va. 345, 354, 153 S. E. 681, 683.

There is nothing in the written contract expressly indicating that it was the intention of the parties that the time of settlement was of the essence. The February 1, 1961, date named in the contract was purely tentative, since it was followed by the language, "or as soon thereafter as the title could be examined and the papers prepared." It is frequently held that the mere naming of a date in a contract on which settlement shall be made does not of itself make time of the essence. See *Waller* v. *Lieberman*, 214 Mich. 428, 183

N. W. 235, 238. Moreover, the appellee waived many times the prompt payment of the $100 monthly installments required by the contract and also accepted the last payment more than a month after its due date. Thus, it is clear that the time specified in the contract was not of the essence.

After orally agreeing on March 6 that April 1, 1961, would be the date of settlement, the subsequent conduct of the parties shows that time was not of the essence of that agreement. The appellee's authorized agent changed the date to April 3, and when settlement was not made on that date she delivered the deed of trust and note to the appellants on April 5 for execution. At that time no date was mentioned when settlement was to be made. It is manifest that if April 3 had been agreed upon as the last day settlement could be made, Mrs. Day would not have delivered the instruments for execution two days after the time had passed. Indeed, this conclusively shows that April 3 was not intended as the last day on which settlement could be made, and that the appellee waived the alleged default, if any, and treated the contract as still in force when the fire occurred.

Mere delay in the performance of a contract will not ordinarily preclude specific performance where it is acquiesced in by the other party. *Beckett* v. *Kornegay, supra,* 150 Va. at p. 645, 143 S. E. at p. 299. See also annotation 65 A. L. R. 7, 55.

▇ The appellants were in possession of the property, had made a substantial payment on the purchase price, had made improvements, and had made a partial settlement, all of which indicated that they intended to complete the transaction. They were entitled to reasonable notice before the attempted rescission by the appellee. *Boatright* v. *Peaks,* 190 Va. 768, 773, 57 S. E. 2d 895, 897; *Boston* v. *Shackelford,* 162 Va. 733, 755, 175 S. E. 625, 633.

The appellee did not attempt to rescind the contract until the appellants delivered the executed deed of trust and note and the required payment to Mrs. Day on April 8. Up to that time the appellee had treated the contract as still in force.

Even if it could be said that the appellants were in default for failing to settle on April 3, they were not precluded, under all the facts and circumstances, from having the contract enforced.

In *Hamilton* v. *Newbold, supra,* this Court said:

"When a vendee, who has been in default in the payment of the purchase price, is and has been in possession from the inception of the contract, offers to pay the entire residue of the purchase price

[here, to satisfy the balance of purchase price by note and deed of trust] and calls for his deed, and the vendor who up to that time has treated the contract as still in force, refuses to accept the purchase price and refuses to deliver the deed, then the vendor is in default and the vendee may maintain a suit against him for the performance of the contract. Under such circumstances the vendor will be treated as having waived the default of the vendee." 154 Va. at p. 354, 153 S. E. at p. 683.

For the reasons stated the appellants are entitled to specific performance of the contract. Accordingly, the decree is reversed and the cause reinstated and remanded to the lower court for further proceedings consistent with the views expressed herein.

*Reversed and remanded.*