## Richmond

RAYMOND F. REUTT AND RAY W. DEZERN v. J. W. JORDAN, LORETTA G. JORDAN AND ROBERT H. WINBORNE, PARTNERS TRADING AS VIRLINA PEANUT COMPANY.

March 6, 1967.

Record No. 6366.

Present, All the Justices.

*Philip L. Russo* and *Beril M. Abraham* (*Russo, White and Katherman*, on brief), for the appellants.

*William C. Worthington* (*Worthington, White and Harper*, on brief), for the appellees.

Buchanan, J., delivered the opinion of the court.

This is a suit in equity for specific performance of a written contract for the sale of real estate brought by the buyers against the sellers. After hearing the evidence *ore tenus* the chancellor denied specific performance to the buyers, dismissed their bill and they are here on appeal.

The contract was dated August 26, 1963, and by its terms J. W. Jordan and others, partners trading as Virlina Peanut Company (herein called sellers), agreed to sell to Raymond F. Reutt and Ray W. Dezern (herein called buyers), a parcel of land known as No. 3455 Azalea Garden Road, in the city of Norfolk, for $12,500, payable $3,000 in cash and $9,500 in deferred payments to be secured by deed of trust. All taxes, insurance, rents and interest were to be prorated as of the date of settlement and settlement was to be made on or before October 15, 1963.

The transaction was handled by B. Bruce Taylor, real estate broker, who suggested to the sellers that he had a purchaser. The sellers dealt entirely through Taylor and had no direct dealings with and did not know the buyers.

Following the signing of the contract of sale a lengthy correspondence was carried on between Taylor and Thomas L. Woodward, attorney for the sellers, and between Woodward and Philip L. Russo, attorney for the buyers. There were letters in September 1963 as to correcting reference to the sellers as a corporation. On September 20 and again on October 2, Taylor wrote Woodward asking for a copy of the note, deed of trust and deed so the buyers' attorney could check the title. It is not apparent why these were needed for that purpose as the contract described the property and the owners were known. Woodward in response inquired as to whom the deed should be made.

On October 10, Taylor received a letter from an agent of the city of Norfolk requesting an option on a strip along the front of the property for purposes of widening the street.

Woodward testified that the deed was prepared by him on October 9 and was signed but not then acknowledged by the sellers; and that the deed of trust was dated October 12 "because I wanted to be ready on the 15th to close the transaction." Taylor wrote Woodward again on October 28 asking him to forward the note and deed of trust.

On November 5, Russo, buyers' attorney, wrote to Woodward

that he had misspelled the name of "Reutt" in the deed and he asked about the disposition of the money that would come from the city of Norfolk for the strip on the front of the property. Woodward replied that all of it should apply on the deed of trust. On November 20, Russo wrote Woodward that he had completed the title examination and would be ready to close "at your convenience," but in the same letter he set out a provision that he wanted to insert in the deed of trust in regard to the sale to the city. Woodward replied, making a counter suggestion.

On December 9, Russo wrote Woodward, returning the executed deed (which apparently had been sent to Taylor), asking that he correct the spelling of "Reutt" and making other requests, including one from a title company that a certificate to the effect that the sellers were a partnership be recorded.

Woodward replied on December 13 that the sellers had no privity with the title company, "and they are pretty well threadbare in the whole transaction. It took 39 days to hear anything about the transaction after the deed was forwarded." "It is high time this transaction be closed." "I will retain the deed here for delivery upon compliance with the terms of sale forthwith."

On December 17, Russo sent Woodward a proposed note and deed of trust and stated that if they were satisfactory they should be sent to Taylor and he would have the buyers execute them. Woodward replied next day that he had redrafted the note because of defects and he was returning the instruments to Russo for delivery to Taylor. On December 19 Russo sent the note and deed of trust to Taylor with instructions to have them executed by the buyers.

But the buyers were not available. They had gone to sea without informing the sellers or their own representatives that they were leaving. On January 7, 1964, Taylor wrote Woodward that the buyers were "presently out of town" in the merchant marine service and there would be a delay in securing the signatures. Again on January 30 he wrote Woodward that he still did not have the signatures. Taylor did not know when the buyers left or when they returned. Reutt said they left sometime in December 1963 and came back in March 1964. He made no effort, he said, to get in touch with any of the sellers before going away.

After Christmas 1963, Jordan, one of the sellers, called Taylor and inquired when the matter would be closed and Taylor told him that Reutt had gone out of the country, with no further explanation. The sellers then concluded that the buyers were not going to take the

property and they informed Taylor and also Woodward that they no longer wanted to sell. Prior to this time, said Jordan, the sellers were ready and willing to sell, but since they knew nothing of the whereabouts or of the financial ability of the buyers, and there had been no tender of the money or of the deed of trust, they no longer felt obligated to sell to them.

Taylor denied that Jordan told him they would not settle. As best he remembered, he said, Jordan only inquired "where are the people, what's the story with them."

On March 20, 1964, Taylor wrote Woodward that he had finally secured the buyers' "signature and money and we are ready to settle." He wrote again on April 2 and then received a letter from Woodward dated April 4, 1964, stating that because of "difficulties, length of time, the trouble, annoyance, taxation, loss of interest, change of conditions and many other reasons" the sellers felt that the buyers had not fulfilled their contract and hence there was no obligation on the sellers to convey the property.

On the facts and circumstances thus presented by the evidence in open court, the court decreed that the buyers had not shown themselves to be entitled to specific performance of the contract. We agree.

It is true, as the buyers argue, that ordinarily time is not of the essence in contracts for the sale of land, and it will not be so regarded unless expressly made so by the terms of the contract or is necessarily to be implied from special circumstances. *Morris* v. *Harrop*, 154 Va. 127, 152 S.E. 343; *Sims* v. *Nidiffer*, 203 Va. 749, 127 S.E.2d 85; 17 Mich. Jur., Specific Performance, § 29, p. 49.

The time for settlement was fixed by the contract as on or before October 15, 1963, but the mere naming of a day on which settlement shall be made does not of itself make time of the essence; and neither the contract nor the surrounding circumstances indicated that this day was the essential time for closing. It affirmatively appears from the testimony of both Woodward and Jordan that the sellers were ready and willing to perform the contract well beyond the specific settlement date, and in their brief they say that they were still ready to close the transaction at mid-December, without regard to whether they or the buyers were the more responsible for the delay up to that time.

But time may become an important, even controlling, element in determining whether performance of the contract should be decreed. Specific performance is not a matter of right. It rests in the sound

discretion of the chancellor, exercised on the basis of established principles and the facts in the particular case. *Hawks* v. *Sparks*, 204 Va. 717, 133 S.E.2d 536; *Griscom* v. *Childress*, 183 Va. 42, 31 S.E.2d 309; *Darling* v. *Cumming's Ex'or*, 92 Va. 521, 23 S.E. 880.

In order for a litigant to avail himself of the remedy of specific performance, "he must show that he has been able, ready, prompt, eager and willing to perform the contract on his part. He must not have remained quiet or held himself aloof so as to enforce or abandon the contract as events might prove advantageous." *Griscom* v. *Childress, supra,* 183 Va. at 47-8, 31 S.E.2d at 312; 17 Mich. Jur., Specific Performance, § 27, p. 46.

The cases relied on by the buyers (*Beckett* v. *Kornegay*, 150 Va. 636, 143 S.E. 296; *Hamilton* v. *Newbold*, 154 Va. 345, 153 S.E. 681; *Sims v. Nidiffer, supra*) in which specific performance was decreed, in nowise conflict with these rules, but they differ materially from the present case in their essential facts.

Here the sellers by their attorney, on December 13, 1963, wrote to the buyers' attorney that they were threadbare about the matter and it was high time that the transaction be closed, and that they would hold the deed for delivery to the buyers upon their compliance with the terms of the sale forthwith.

Instead of complying forthwith, the buyers left the Norfolk area without giving any information as to why, when or where they were going or when they were coming back. They left without tendering to the sellers any money, or the note or the deed of trust, or giving the sellers any assurance of any purpose to do any of these things at a later date. They did not return to the Norfolk area until sometime in March 1964, some five months after the closing date specified in the contract. In the meantime the sellers were without any information as to the financial ability of the buyers, or knowledge of their whereabouts or of their intentions.

On March 20, Taylor wrote Woodward that he had finally secured the buyers' signatures and money and they were ready to settle. No explanation was offered of their unconcern about completing their agreement to purchase the property during this considerable period of time.

The evidence did not establish that the buyers had been ready, prompt, eager and willing to perform the contract on their part so as to entitle them to compel specific performance on the part of the sellers. Consequently the chancellor properly refused to grant specific performance and his decree to that effect is therefore

*Affirmed.*