# Richmond

MARY HELEN CRANFORD v. MARYE HUBBARD.

April 22, 1968.

Record No. 6586.

Present, Buchanan, Snead, I'Anson, Carrico, Gordon and
Harrison, JJ.

*Paul Lee Sweeny* for appellant.

*Nathan L. Silberberg* (*Howard B. Silberberg* (D.C.), on brief),
for appellee.

BUCHANAN, J., delivered the opinion of the court.

This is a suit in equity brought by Marye Hubbard, complainant,

against Mary Helen Cranford, defendant, for the specific performance of a contract for the sale of real property.

The contract was dated July 26, 1963, and by it the defendant, Cranford, for a consideration of $1,000.00, agreed to sell to complainant, Hubbard, "or assigns," the property "at the northeast corner of Route 1 and Gunston Hall Road (Rt. 242), Fairfax County, Virginia, containing approximately 7.097 acres. Further described as parcel 135, double-circle 1, Fairfax County Real Estate Assessment plat 113." The exact acreage was to be determined by a certified survey "provided at the expense of the purchaser" and the price was $3,100.00 an acre.

Examination of the title, conveyancing, and all recording charges were to be "at the cost of the purchaser," and the contract further provided: "The purchaser agrees to comply with the terms of sale herein within 90 days from the date of acceptance by owner or the deposit may be forfeited, in which event one-half of said deposit shall be paid to Seller, and one-half of said deposit shall be paid to Agent."

Further provisions were that the settlement should be made at the office of Swinburne & Mountfort [attorneys] and the title was to be good of record or sale would be declared off and deposit [$1,000.00] returned to the purchaser. "However, a reasonable time shall be allowed the Seller to correct any defects reported by the title examiner." Opposite the signatures of the parties was written "Accepted by Owner this 28th day of July, 1963."

The complainant, Hubbard, did not comply with the terms of sale within ninety days from the date of acceptance, and a few days after the expiration of the ninety days defendant, Cranford, gave notice that she would not convey the property, and on January 29, 1964, complainant Hubbard filed this suit against defendant Cranford.

Defendant appeared specially and filed motions to dismiss, which were overruled, and an answer. The court then heard evidence *ore tenus* and thereafter entered its decree granting specific performance and directing the defendant to perform the contract and convey the property to the complainant. This appeal by the defendant followed.

[1] The defendant makes twenty-three assignments of error, one of which challenges the jurisdiction of the court to entertain the suit. The defendant was a nonresident of Virginia. She lives in Montgomery county, Maryland, and was there served with process on March 17, 1964. Such service has the same effect as an order of publication duly executed, Code § 8-74, and upon any trial or hearing

under said section "such judgment, decree or order shall be entered as may appear just", Code § 8-75.

In *Clem* v. *Givens*, 106 Va. 145, 55 S.E. 567, specific performance of a contract for the sale of real estate was ordered against a non-resident proceeded against by order of publication. It was said in the opinion that *Arndt* v. *Griggs*, 134 U.S. 316, 10 S.Ct. 557, 33 L.Ed. 918, is an instructive case "and it leaves no room to doubt the power of the states to provide substituted process in all proceedings relating to or affecting the titles to lands within their respective limits." 106 Va. at 148, 55 S.E. at 568. *Pennoyer* v. *Neff*, 95 U.S. 714, 24 L.Ed. 565, was cited on the point that personal service within the jurisdiction, or a general appearance, is necessary to the validity of a proceeding *in personam;* but the court added: "If, on the other hand, the proceeding be *in rem,* or *quasi in rem,* where the *res* to be affected by the litigation is within the jurisdiction of the court, notice by publication is ordinarily sufficient." 106 Va. at 147, 55 S.E. at 568.

The language of the decree in the present case makes it an *in personam* decree and hence it goes beyond permissible limits. If the complainant is entitled to any relief, it should be of an *in rem* nature and accomplished by the appointment of a commissioner as provided by Code § 8-670.

Defendant's other assignments of error include one or more to the holding that the complainant's delay in performing her part of the contract did not bar her from having specific performance by the defendant, and this is the decisive issue in the case.

[2] The facts of the case are obscured rather than revealed by the printed record. It is made up of excerpts taken here and there from the testimony and frequently without meaning except by reference to the transcript of the testimony, which itself contains about as much argument as evidence and requires searching to ascertain who is asking and who is answering.

The evidence bearing on the stated issue as screened from the printed record plus the transcript may be fairly stated as follows:

[3] In June, 1963, the defendant, owner of the property, telephoned attorney Mountfort, who had previously represented her in some other matters, and told him that a relative had presented to her a contract for the sale of the property at $2,500.00 an acre. She inquired whether Mountfort could get her more than that for it and requested him to look at the property. Mountfort and his partner, Swinburne, examined the property and then called Kincaid, "who

deals in property". Kincaid looked at it and made a report, the contents of which are not shown.

Afterwards, "the purchasers" presented a contract at a price of $3,000.00 an acre. Defendant changed the price to $3,100.00 per acre. The contract was executed by both parties and was filed as an exhibit. While the contract was executed by complainant Hubbard, she acted for her associates as well. They were Weissberg, a real estate developer, her employer, whose interest in the transaction was seventy percent, and Kincaid, whose interest was twenty percent. The complainant's interest was ten percent.

Attorneys Swinburne and Mountfort were employed by the purchasers to examine the title and by letter dated August 15, 1963, Mountfort sent to defendant Cranford the check of his firm for $1,000.00 "representing the deposit posted by the purchaser of your property."

When the contract was originally presented to defendant Cranford, it provided that the purchaser should comply with its terms in 180 days. Defendant complained about that. She said, "That was six months and it was too long for me." Mountfort asked what she wanted and she replied that she wanted it changed to ninety days, and it was changed that way. This change was agreed to by Mrs. Hubbard and she initialed the change to evidence her acceptance. The contract had been brought to her by Kincaid and she had signed it on July 26, 1963.

By the terms of the contract, as stated, the complainant agreed to comply with its terms of sale within ninety days from the date of acceptance by the defendant owner. The date of defendant's acceptance, as shown on the face of the contract, was July 28, 1963. Ninety days from that time was October 26, 1963. The defendant and her associates did not comply with the terms of contract on that date or before that date. They made no request for an extension of time and no explanation of their failure to comply.

The defendant testified that around the first of November, about a week after the time limit had expired, and several times afterwards, she called Mountfort and told him that the contract had expired and she did not want to go through with it, but that Mountfort said she would have to or she would have a lawsuit on her hands. On December 10, defendant wrote a letter to Mountfort stating that the contract had expired a month before, that she had paid her taxes for another year and did not want to sell her property. Mountfort called

her on December 12, 1963, to say that a settlement was proposed for December 13, 1963. She told him of the letter she had written him but he said he had not received it at that time. An attorney employed by her also wrote Mountfort on January 2, 1964, that since there had been no compliance with the contract within the required time, the defendant was not obligated to convey and would not convey the property.

Mountfort, who had been employed by the complainant and her associates to examine the title to the property, testified that periodically he became aware that there were survey problems involving the land; that he had conferences with the defendant Cranford and knew she was getting anxious about it. He explained to her that a proper description of the property was needed. It seemed, he said, that the surveyor was having a great deal of trouble. On one occasion defendant told him how they could get in touch with the "next door neighbor to the property" for the purpose of identifying the boundary lines, and the name of Mrs. Downs was mentioned in that connection.

The surveyor employed by the complainant to make the survey testified that complainant ordered the survey on August 30, 1963, and he started the work two or three days after it was ordered. He found no description of the property and there were no markers or trees or anything that would help him in his work. He was looking, he said, for the dividing line between this property and that of Mrs. Downs. He met Mrs. Downs at the property and she furnished photographs from which he could see the old road and other things that enabled him to establish the lines and complete the survey. He stated that it was Armistice Day, 1963, when he met Mrs. Downs but in his answer to a question from the court he said it was probably in October. He testified that he was never informed of any time period in which the survey was to be completed. He thought he worked on the job the better part of thirty working days from the time he undertook the work.

The complainant testified that she initialed the changes in the contract on the 29th or 30th of July and ordered the survey twenty-nine or thirty days later. She said that she was on vacation for three weeks after the first week of August and placed the order for the survey after she returned. She said that two or three weeks after the order was given she called the surveyor and reminded him that she had requested the survey on August 30 and inquired whether it would be received in the next few days. She was not allowed to give his answer,

but testified that she called the surveyor about two weeks later and told him she wanted to make settlement under the contract before the end of the month and the survey was needed for that purpose.

By letter dated December 30, 1963, Weissberg directed his attorneys to record the sales contract as soon as possible. According to the evidence, forty-eight days elapsed after the expiration date of the contract, October 26, 1963, before the settlement date was fixed at December 13, 1963, by the complainant's examining attorneys.

The trial court in its written opinion expressed the view that time was "somewhat of the essence, inasmuch as Mrs. Cranford changed the 180 day time for settlement to 90 days."

We conclude from the evidence that time was entirely of the essence and so agreed by the parties when the contract was executed.

The defendant refused to sign the contract first presented because it provided for a period of 180 days for the purchaser to comply with its terms. In order to secure the contract the purchaser agreed that the time limit should be ninety days. The contract was changed so to provide and then agreed to by the contracting parties. To say now that time was not material and that the forty-eight additional days should be allowed is to make a contract different from that made by the parties in respect to an element which was specifically discussed and agreed on by them. In addition, as noted, by the terms of the contract the complainant expressly agreed to comply with the terms of sale within ninety days from the date of acceptance by the defendant, July 28, 1963, "or deposit [$1,000.00] may be forfeited."

> "In equity, time is not usually regarded as of the essence in contracts for the sale of real estate, unless its language expressly indicates such intention, or it necessarily follows from the conduct of the parties or the nature and circumstances of the agreement. * *"
> *Sims* v. *Nidiffer*, 203 Va. 749, 752, 127 S.E.2d 85, 87.

> "Time may be made of the essence of the contract by express stipulation, or even without an express stipulation to that effect where such intention is clearly manifested from the agreement as a whole, construed in the light of the surrounding facts. * *"
> 49 Am. Jur., Specific Performance, § 42, at p. 56.

The trial court also stated in its opinion that the complainant did not meet one requirement imposed by equity on the complainant seeking specific performance, in that she made no concrete effort to obtain an extension of time when it appeared that the survey would

not be completed within the ninety days, and thus she did not show herself to be eager and desirous of maintaining her rights. The fact is that she did not make any effort, concrete or otherwise, to gain such extension. And she was delinquent in a more serious degree than that. After executing the contract and with full knowledge of the time limit, and without any knowledge of the time that might be required for the necessary survey, she delayed for thirty days, one-third of the contract limit, in giving the order for a survey—the same number of days that the surveyor estimated he used in completing the survey.

On these established facts, we cannot agree with the trial court that there was sufficient justification for the forty-eight days' delay and that the complainant was reasonably diligent in obtaining the survey required by the contract.

"No principle of equity is more generally approved than that the specific performance of a contract is not a matter of absolute right but rests in a sound judicial discretion. In order for a litigant to avail himself of this extraordinary remedy, he must show that he has been able, ready, prompt, eager and willing to perform the contract on his part. He must not have remained quiet or held himself aloof so as to enforce or abandon the contract as events might prove advantageous. * *" *Griscom* v. *Childress*, 183 Va. 42, 47-8, 31 S.E.2d 309, 312. *Reutt* v. *Jordan*, 207 Va. 869, 153 S.E.2d 197; 17 Mich. Jur., Specific Performance, § 27, p. 46.

We hold that the complainant did not show herself entitled to have specific performance of the contract, and the decree appealed from is therefore reversed and the cause is remanded with direction to the court below to require the release of the sales contract which has been recorded.

*Reversed and remanded.*